# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

|                                         |       |                                            |
| --------------------------------------- | ----- | ------------------------------------------ |
|                                         | )     |                                            |
| **IN THE MATTER OF:**                   | )     | Davidson County Junvenile Court            |
| **S.M.C. and J.L.C.**                   | )     | Nos. 08-06-49 & 9619-24593                 |
|                                         | )     |                                            |
|                                         | )     | C.A. No. 01A01-9807-JV-00358               |
|                                         | )     |                                            |

**FILED**

June 11, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

From the Juvenile Court of Davidson County at Nashville
**Honorable Andrew J. Shookhoff, Judge**

**Thomas H. Miller**
Franklin, Tennessee
Attorney for Petitioner/Appellant, David Edward Chaphe, Jr.

**J. Michael O'Neil**
Nashville, Tennessee
Attorney for Petitioner/Appellant, Sonya Chaphe

**Paul G. Summers**, Attorney General & Reporter
**Douglas Earl Dimond**, Assistant Attorney General
Nashville, Tennessee
Attorney for Respondent/Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Respondents David Edward Chaphe, Jr. ("Mr. Chaphe") and Sonya Chaphe ("Mrs. Chaphe") (collectively "Chaphes" or "Appellants") appeal from the judgement of the Juvenile Court which terminated the Chaphes' parental rights to daughter, S.M.C. and son, J.L.C.

## I. Factual and Procedural History

On March 18, 1996, a petition for temporary custody and emergency removal of S.M.C. and J.L.C. was filed on behalf of the State of Tennessee Department of Health.[1] At that time, S.M.C. was nearing five (5) years of age and J.L.C. was nearing four (4) years of age. The children were removed from the Chaphes' home and have been in foster care continuously since then.

The petition alleged that Mr. Chaphe had sexually abused S.M.C., that both parents had physically abused S.M.C. and that both parents had neglected S.M.C. and J.L.C. At the conclusion of a three day trial, the Juvenile Court referee found that S.M.C. was the victim of severe child abuse in that Mr. Chaphe had sexually abused her and Mrs. Chaphe had failed to protect her; that S.M.C. had been physically abused by one or both parents; that S.M.C. was a neglected child; and that J.L.C. was a dependent and neglected child because of his parents' refusal and failure to provide him with a nonviolent environment in which he can grow and develop.

On January 21, 1998, the Chaphes requested a de novo hearing before the Juvenile Court judge pursuant to Tenn. Code Ann. § 37-1-107 and Rule 4(c)(1) of the Tennessee Rules of Juvenile Procedure. Prior to the rehearing, the State of Tennessee Department of Children's Services ("DCS," "Department," or "State") filed a petition to terminate parental rights. As grounds, DCS cited the severe child abuse of S.M.C., Mr. Chaphe's four year sentence for attempted aggravated sexual battery of A.S. (Mrs. Chaphe's daughter from an earlier relationship), and the persistence of conditions in the Chaphes'

---

[1] The Department of Children's Services was known as the Department of Health for a brief period of time.

lives that prevented the children's return. The Juvenile Court bifurcated its hearing of the Chaphes' petitions requesting rehearing of the referee's findings and its hearing of the Department's petition to terminate parental rights, apparently with all parties' consent. The Juvenile Court judge first reheard the referee's findings of severe child abuse as to S.M.C. and the dependency and neglect as to J.L.C. on July 11, July 14, August 18, September 8 and November 24, 1997.

On May 13, 1998 the Juvenile Court entered an order sustaining the dependent-neglected petition and reaching the same conclusion from the proof as had the referee. This order was not appealed. On May 28, 1998, the Juvenile Court judge heard evidence going solely towards the termination of the Chaphes' parental rights. On June 8, 1998 the Juvenile Court entered a memorandum opinion and order terminating the Chaphes' parental rights. The judge again found that S.M.C. was the victim of severe child abuse. The judge found that the Chaphes had received extensive services prior to the children's removal, yet the abuse continued. The judge found that both Chaphes denied Mr. Chaphe's sexual misconduct toward A.S. despite his guilty plea. Accordingly, the judge terminated both parents' rights under the persistence of conditions ground set out at Tenn. Code Ann. § 36-1-113(g)(B)(A) and the severe child abuse ground set out at Tenn. Code Ann. § 36-1-113(g)(4). Additionally, the judge terminated Mr. Chaphe's parental rights because he had received a sentence greater than two years for conduct found to be severe child abuse, as set out at Tenn. Code Ann. § 36-1-113(g)(5). This appeal by the Chaphes followed.

## II. Standard of Review

Parents have a fundamental right to the care, custody and control of their children. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute and parental rights may be terminated upon a finding by the court by clear and convincing evidence that the grounds for termination of parental rights have been established and that termination is in the best interests of the child. Tenn. Code Ann. § 36-

1-113(c). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn.App. 1995).

The standard of review on appeal is *de novo* upon the record with a presumption of correctness of the trial court's findings of fact unless the preponderance of evidence is otherwise. Conclusions of law are reviewed de novo with no presumption of correctness. T.R.A.P. 13(d).

### III. Grounds for Termination

The Juvenile Court terminated the parental rights of the Chaphes based upon several statutory grounds. The Juvenile Court found that the State established grounds for termination of parental rights of both parents by clear and convincing evidence pursuant to Tenn. Code Ann. §§ 36-1-113(g)(3)(A), 36-1-113(g)(4) and, with respect to Mr. Chaphe, pursuant to § 36-1-113(g)(5). We shall address each of these grounds in turn.

### A. Tenn. Code Ann. § 36-1-113(g)(4) as grounds for termination

In Tennessee, a court may terminate parental rights when:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4).

The statute clearly states that the court may terminate parental rights if the parents were found to have committed severe abuse against the child or child's sibling under any prior order of the court. In the case at hand, the Chaphes were found to have committed severe child abuse in an order entered by the Juvenile Court referee in the dependent and neglect proceedings. The Chaphes appealed that order and the Juvenile Court judge

4

conducted a de novo hearing, filing an order on May 13, 1998 that affirmed the referee's finding of severe child abuse. The Juvenile Court judge specifically found that "S.M.C. is a victim of severe child abuse as defined in Tenn. Code Ann. § 37-1-102(b)(21) because the neglect and abuse by her parents has produced developmental delays and emotional harm which severely impair her ability to function adequately in her environment."

A juvenile court order in a dependency and neglect proceeding must be appealed de novo to the Circuit Court within ten days. Tenn. Code Ann. § 37-1-159(a). The Chaphes did not appeal the order in the dependent and neglect proceeding to the Circuit Court and therefore that order has become final and unreviewable in this court. The Chaphes proceeded directly to the termination hearing on May 28, 1998.

At the termination hearing, the Juvenile Court judge found the state established grounds for termination of parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(4). The existence of the prior court order finding the Chaphes committed severe child abuse suffices to establish grounds for termination of parental rights under Tenn. Code Ann. § 36-1-113(g)(4). The State is not required to prove severe child abuse again in the termination proceeding.

However, the order of termination also contains numerous factual findings which independently support a finding of severe child abuse by the Chaphes. Severe child abuse is defined as:

> (A) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death;
> (B) Specific brutality, abuse or neglect towards a child which in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or retardation, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct; or
> (C) The commission of any act towards the child prohibited by §§ 39-13-502--39-13-504, 39-13-510, 39-13-522, 39-15-302, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child;

Tenn. Code Ann. § 37-1-102(21).

5

The Juvenile Court made the following findings of fact with regard to abuse by the

Chaphes:

> S.M.C. was observed on numerous occasions experiencing disassociative episodes. Based on the expert testimony presented, the Court finds that these disassociative episodes are a result of S.M.C. having been severely psychologically traumatized by conduct or events which she experienced.
>
> S.M.C. has exhibited highly sexualized behaviors and S.M.C. and J.L.C. have both exhibited unusually aggressive behaviors.
>
> S.M.C. has made statements in day to day activities and in therapeutic counseling, the language of which in both nature and content is unusual and disturbing. It has included highly sexualized themes and vocabulary. It has also included themes and vocabulary which are highly aggressive and abusive in nature. These statements have sometimes been made in the context of play, in which the words and actions of the parent characters played by S.M.C. are abusive to the child characters.
>
> Because S.M.C. is significantly developmentally delayed, her retention and incorporation of the unusual and disturbing vocabulary and themes into her language and her sexualized and aggressive behaviors could not reasonably be attributed to isolated, infrequent or inadvertent exposure to such language or behavior. The Court can only conclude that S.M.C.'s adoption of this vocabulary and the themes of sexuality and aggression and her sexualized and aggressive behaviors were a direct result of repetitive exposure to such language and behavior.
>
> With the exception of the two months that S.M.C. spent in foster care in 1992, S.M.C. and J.L.C. had been in the continuous care and custody of one or both her parents until her removal from her parents custody in March of 1996. For the two years immediately preceding removal, both children were in the continuous care and custody of both parents.
>
> The Court can only conclude that the psychologically traumatizing events giving rise to the disassociative behavior and the exposure to language and conduct giving rise to the troubling statements and behaviors occurred in the household of the Chaphes.
>
> When S.M.C. came into state custody, she exhibited highly sexualized behaviors and speech. In play therapy she has consistently referred to her father in relation to sexual themes. She made explicit statements of sexual abuse by her father in spontaneous disclosures to her foster parents and in statements to therapists. These statements regarding sexual abuse by her father, made over a period of time to different people under circumstances and in situations that were not unduly suggestive or directive, and viewed in the context of the child's sexualized behavior and language that, in light of her developmental delays, could only have come from exposure to conduct and language within the household, constitutes clear and convincing evidence that S.M.C. was sexually abused by her father, David Chaphe.

The Juvenile Court then made the following conclusions based upon the above

findings.

> The Court finds that the evidence taken as a whole, including the language and behavior exhibited by S.M.C., the aggressive behaviors that both S.M.C. and J.L.C. exhibited, the numerous unusual bruises and marks observed on S.M.C. by school officials and others over a period of time prior to the children's removal in 1996, constitute clear and convincing evidence that both J.L.C. and S.M.C. were exposed, while in their parent's custody, to a household environment that was emotionally abusive and physically abusive and that either both parents were perpetrators of this emotional and physical abuse or one parent was involved in the abusive conduct and the other parent failed to protect the children from the abuse.
>
> Based on the expert testimony presented in this case, including that of Dr. Potts, the expert witness engaged by the respondents, the Court finds S.M.C. to have been a victim of severe child abuse as defined in T.C.A. § 37-1-102(b)(21)(B) in that she has suffered abuse and neglect by her parents which has produced severe developmental delay and severe impairment of her ability to function adequately in her environment.

Much of the evidence presented at trial regarded statements made by S.M.C., observations of her behaviors, and opinions formed based on those statements and behaviors. The Chaphes argue that the admission of S.M.C.'s statements was improper under Rule 803(25) of the Tennessee Rules of Evidence, and the admission of descriptions of many of her behaviors was improper under State v. Ballard, 855 S.W.2d 557 (Tenn. 1993) and Rule 702 of the Tennessee Rules of Evidence.

Many statements that S.M.C. made were treated as "disclosures" of physical and sexual abuse and were admitted into evidence pursuant to Rule 803(25), which provides a hearsay exception for statements about abuse or neglect by a child alleged to be the victim of various kinds of abuse or neglect in certain civil proceedings.

> Unless the circumstances indicate lack of trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(10), issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(19), or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147(d).

Tenn. R. Evid. 803.

The Chaphes argue that the statements should have been excluded pursuant to the Rule as the circumstances indicated lack of trustworthiness.

7

The Advisory Commission Comment to Rule 803(25) indicates that in determining whether the circumstances indicate lack of trustworthiness, courts should consider the motivation of minor declarants, the motivation by adults to influence children, and the presence or absence of evidence corroborating the statement. Whether a child's statement of sexual abuse is admissible as a hearsay exception is within the discretion of the trial court. State v. Purcell, 955 S.W.2d 697, 609 (Tenn.App. 1997). The trial court can only be reversed on a showing of abuse of discretion on questions of admissibility of evidence. Id.

We do not believe the circumstances in this case indicated a lack of trustworthiness in S.M.C.'s statements as to her sexual abuse. S.M.C. consistently disclosed that Mr. Chaphe had sexually abused her to four witnesses: Mrs. Piettro, Ms. Clemons, Ms. Johnson and Ms. Shanley. Dr. Potts, the Chaphes' expert, noted that S.M.C. enjoyed shocking people, but conceded that the record did not suggest any such improper reaction that might have inadvertently "coached" S.M.C. He also added that S.M.C. was a poor liar and that if she made the same statements to different people, her statements were probably credible. We find that the Juvenile Court did not abuse its discretion in allowing the hearsay statements of sexual abuse.

The Chaphes also contend that while the court may consider S.M.C.'s behavior as it has been observed by the witnesses, it must do so within the parameters of State v. Ballard, 855 S.W.2d 557 (Tenn. 1993) and its progeny. The Tennessee Supreme Court has held that expert testimony that children exhibit symptoms or characteristics of posttraumatic stress syndrome should not suffice to confirm the fact of sexual abuse and that such testimony should be inadmissible. Id. at 561. The Court was especially concerned about such expert testimony's prejudicial effect on a jury because of its "aura of special reliability and trustworthiness." Id. at 561-62. Under the Court's reasoning, expert testimony in criminal trial as to children's psychological symptoms may not be used to prove that sexual abuse caused those symptoms. Id.

From our reading of the record, the witnesses testified to their personal observations

of S.M.C.'s behaviors. Appellants have not cited to any particular testimony in the record which supports their assertion and we cannot find testimony of this nature in the record. When questioning the expert witnesses, and other witnesses with specialized knowledge in this matter, the State did not ask the witnesses to ascribe the cause of S.M.C.'s symptoms to her sexual abuse. From our reading of the record, it appears that the questions as to whether sexual abuse caused S.M.C.'s behaviors were posed by the Chaphes' attorneys on cross examination. Accordingly, we find that the behavior evidence admitted in this case did not violate Ballard.

The statements of S.M.C. and behavioral descriptions were properly admitted. The Juvenile Court found that the Chaphes severely abused S.M.C. Based upon our careful reading of the record, the evidence presented to the Juvenile Court judge supports the Juvenile Court's finding that S.M.C. was the victim of severe child abuse and that either both parents were perpetrators of such abuse or one parent was involved in the abusive conduct and the other parent failed to protect her from the abuse. Based upon said findings of abuse by the Juvenile Court judge and/or the previous unappealed order finding the Chaphes guilty of child abuse, we find that the grounds for removal set forth in Tenn. Code Ann. § 36-1-113(g)(4) were met. The language of said statute also supports removal of any sibling or half-sibling of such child from the home upon such a finding.

**B. Tenn. Code Ann. § 36-1-113(g)(3)(A) as grounds for termination**

The Juvenile Court also found that grounds for termination were met under Tenn. Code Ann. § 36-1-113(g)(3)(A). This subsection of the statute allows termination when there is clear and convincing evidence that:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

9

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

In finding that termination was proper pursuant to this subsection, the Juvenile Court made the following findings:

Mr. and Mrs. Chaphe received extensive services and interventions prior to the neglect and abuse charges which resulted in the removal of J.L.C. and S.M.C. in 1996. The fact that child neglect and abuse continued to occur in the Chaphe household despite these extensive services compels the Court to find that the Chaphes' parenting deficits are so severe that there are no services that can be provided at this point to allow these parents to resume responsibility for raising these children, especially in light of the fact that neither Mr. Chaphe nor Mrs. Chaphe have acknowledged any responsibility for parental misconduct.

Mr. Chaphe, despite his guilty plea and conviction, denies ever committing the offense to which he pled guilty and of which he was found guilty beyond a reasonable doubt. In evaluating Mr. Chaphe's credibility as a witness, the Court is faced with testimony by Mr. Chaphe in a civil proceeding that contradicts a finding to the contrary beyond a reasonable doubt in a criminal proceeding. This Court is bound, as a matter of law, by the criminal court conviction.

The inconsistency between Mr. Chaphe's guilty plea in criminal court and his testimony in Juvenile Court, at a minimum, makes it difficult for the Court to give any significant credence to his testimony.

Although she hesitated when asked about her husband's guilty plea, Mrs. Chaphe testified that she does not believe that Mr. Chaphe was guilty of any sexual misconduct towards A.S. Mrs. Chaphe has inextricably linked her position to that of Mr. Chaphe. And her credibility thus suffers when his credibility is effectively challenged.

The state has established grounds for termination of parental rights by clear and convincing evidence, pursuant to T.C.A. § 36-1-113(g)(3)(A). The conditions which led to the removal - the parenting deficits which resulted in physical, emotional and sexual abuse - still persist. Parental unfitness was initially established by the Juvenile Court proceedings in 1992 and the criminal court proceedings in 1993. Despite extensive and intensive services provided to the family, abusive and neglectful conduct recurred. Given the failure of past intervention efforts and the inability of the parents to acknowledge their misconduct and recognize the impact of the misconduct on their children, there is little likelihood that these conditions of parental unfitness will be remedied in the foreseeable future.

The Chaphes argue that without the improperly admitted hearsay and behavior evidence, the court would have no basis for finding persistence of dangerous conditions. As discussed above, we find that the evidence complained of by the Chaphes was properly

10

admitted and therefore this argument must fail. Furthermore, as will be discussed more fully in the following section, Mr. Chaphe pled guilty to attempted aggravated sexual battery of A.S. in 1992. Despite that plea, the Chaphes continue to adamantly deny that Mr. Chaphe sexually abused either A.S. or S.M.C. The Chaphes' denial prevents them from remedying the danger of sexual abuse posed to the children by Mr. Chaphe. Accordingly, we find that the Juvenile Court did not err in finding clear and convincing evidence existed to terminate parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A).

## C. Tenn. Code Ann. § 36-1-113(g)(5) as grounds for termination

The Chaphes' court involvement dates back to 1992 when Mrs. Chaphe's daughter from a previous relationship, A.S., was found by the court to be a dependent and neglected child. The allegations of abuse and neglect which were the subject of the 1992 Juvenile Court proceeding, also gave rise to Criminal Court proceedings against both parents. On September 3, 1993, Mr. Chaphe pled guilty to attempted aggravated sexual battery for which he received a four year sentence. Mrs. Chaphe pled guilty to child abuse and neglect and received a sentence of 11 months and 29 days probation.

In the termination proceeding at issue, the Juvenile Court found the 1993 conviction of Mr. Chaphe to be grounds for termination under Tenn. Code Ann. § 36-1-113(g)(5). This subsection allows termination of parental rights upon clear and convincing evidence that:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, which has been found under any prior order of a court or which is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102(b)(19).

Tenn. Code Ann. § 36-1-113(g)(5).

Appellants argue that neither the Juvenile Court nor any prior court has found that Mr. Chaphe's conduct in that case constituted severe child abuse. They contend that without such a finding, Mr. Chaphe's conduct in the 1993 case would qualify as "severe child abuse" only if it is one of the offenses enumerated in Tenn. Code Ann. § 37-1-

11

102(b)(21)(C).[2] Under this subsection, child abuse includes the commission of any of several enumerated offenses or the knowing failure to protect the child from the commission of such act towards the child.

While aggravated sexual battery is one of the enumerated offenses which constitutes severe child abuse, attempted aggravated sexual battery is not. However, the fact that the Juvenile Court found Mr. Chaphe's prior conviction to be grounds for termination under Tenn. Code Ann. § 36-1-113(g)(5), may indicate an implicit finding by the Juvenile Court that the attempted aggravated sexual battery was "severe child abuse."

Based upon our affirmance of the other two grounds for termination, it is not imperative that we decide this issue and we respectfully decline.[3] It is sufficient that the termination of parental rights rested on one or both of the aforementioned grounds.

In conclusion, we find that there existed clear and convincing evidence to terminate the parental rights of the Chaphes pursuant to the grounds enumerated in Tenn. Code Ann. § 36-1-113(g)(4) and Tenn. Code Ann. § 36-1-113(g)(3)(A).

## IV. Efforts to Reunite Mrs. Chaphe with her Children

Mrs. Chaphe contends that reasonable efforts were not made to reunite her with her children. She contends that the DCS policy is not to provide such services to the parents after a finding of severe abuse. Mrs. Chaphe argues that the State failed to meet its federal and state obligation to the parents to make reasonable efforts to reunite the family.

The record contains testimony of a DCS worker who testified to extensive services

---

[2]While Tenn. Code Ann. § 36-1-113(g)(4) tells us the term "severe child abuse" is defined in § 37-1-102(b)(19), subsection (19) contains the definition of the term "protective supervision." "Severe child abuse" is defined in § 37-1-102(b)(21).

[3]Additionally, the issue was only briefly addressed by the parties in their briefs to this Court. No party devoted more than two paragraphs to the issue. The state contends that the attempt to commit a sexual crime against a child qualifies as a knowing failure to protect the child from the crime. As we do not need to address this issue to uphold the termination, we will leave this issue to be more fully litigated in an appropriate case in the future.

provided to the Chaphes to assist them in complying with their plans of care. While there was testimony that the Chaphes substantially complied with the plans, the DCS worker explained that the finding of severe child abuse was the impediment to the children being placed back in the home. Under current federal law, with which Tennessee must comply to remain eligible for federal assistance, no reasonable efforts need be made when the parent has subjected the child to aggravated circumstances under state law that would include severe child abuse and sexual abuse. 42 U.S.C. § 671(15)(D)(I).

The record does not support Mrs. Chaphe's claim that reasonable efforts were not made to reunite Mrs. Chaphe with her children. Furthermore, the record shows that, despite Mr. Chaphe's guilty plea, Mrs. Chaphe continues to deny that Mr. Chaphe was guilty of any sexual abuse, no matter what efforts DCS made. The Juvenile Court judge concluded that "the Chaphes' parenting deficits are so severe that there are no services that can be provided at this point." We find that reasonable efforts have been made in this case, beginning in 1992 when A.S. was removed from the Chaphe home.

## V. Best Interests of the Children

Having found that grounds for termination of parental rights have been established by clear and convincing evidence, a court may terminate parental rights upon a finding that termination is in the best interests of the child. The Juvenile Court found that termination was in the best interests of the Chaphe children, stating as follows:

> In this particular case, neither Mr. Chaphe or Mrs. Chaphe has been able to acknowledge responsibility for the abuse and neglect of these two children. Extensive services have been provided to the family over a long period of time, none of which have allowed the family to gain insights into their own behavior in order to either acknowledge their behavior or change the behavior. There is simply no way to reconcile the findings that the Court has made based on the overwhelming testimony presented by the Department of Children's Services and the continued denial of wrong doing by the parents.
> In light of this impasse, there is no prospect of the children being returned to their parents and the only means for them to achieve permanency is through termination of parental rights and adoption. It is therefore the finding of this Court that it is in the children's best interest to grant this termination petition.

The Chaphes contend that in its consideration of best interest, the Juvenile Court looked only at Mr. Chaphe's failure to acknowledge responsibility for the abuse and neglect of these two children. The Chaphes argue that there is no legal basis for the proposition that a child cannot be returned to a home if there has been abuse or neglect and the parents do not acknowledge their acts.

While we can find no authority specifically directing that a child may not be returned to a home unless the parents acknowledge the abuse, such a factor may certainly be considered in evaluating the best interest of the child. This Court recently relied on this same factor in the best interests determination in Farmer v. Dept. of Children's Services, No. 01A01-9610-JV-00485, 1997 WL 803709 (Tenn.App. Dec. 30, 1997).

> Because Mrs. Estes continued to deny the childrens' problems and her role therein, because she was unable to recognize indicators of abuse and thus protect her children; because the children thrived in foster care and because only after termination could the children be adopted into a nurturing environment, the Juvenile Court correctly concluded that termination of parental rights was in the childrens' best interest.

Id. at *9.

The Juvenile Court correctly found by clear and convincing evidence that both J.L.C. and S.M.C. were exposed, while in the Chaphes' custody, to a household environment that was emotionally abuse and physically abusive; that S.M.C. was the victim of severe child abuse; and that S.M.C. was sexually abused by her father, Mr. Chaphe. The record shows that the children have improved developmentally, emotionally, and behaviorally since their removal from the Chaphe home. Based upon the findings of severe abuse, sexual abuse, and neglect; the fact that the Chaphes continue to deny the abuse; the improvement in the children since the removal from the Chaphe home; and the finding that the only means for the children to achieve permanency is through termination of parental rights and adoption, we hold that the Juvenile Court was correct in finding that termination of parental rights was in the best interest of the children.

### VI. Termination of Parental Rights

14

This Court finds that clear and convincing evidence demonstrates that the Juvenile Court correctly terminated the parental rights of Mr. and Mrs. Chaphe under the provisions of Tenn. Code Ann. § 36-1-113(g)(4) and § 36-1-113(g)(3)(A) and equally demonstrates that such termination is in the best interests of the children, S.M.C. and J.L.C.

## VII. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.