IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004

## KENNETH I. CAMPBELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 91-S-831     J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-00589-CCA-R3-PC- Filed February 22, 2005**

_____

The petitioner, Kenneth I. Campbell, was convicted of first degree murder and theft of property and received an effective sentence of life imprisonment. He later sought both direct and post-conviction appeals, both of which were denied by this court. Subsequently, he filed a petition for post-conviction relief based on the Post-Conviction DNA Analysis Act of 2001, which was dismissed. He appeals that dismissal, arguing that the post-conviction court erred in dismissing the petition without ordering DNA testing on a bullet introduced at the petitioner's trial. Following our review, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Kenneth Campbell.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Michael D. Rohling, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

The petitioner was convicted in 1991 of first degree murder and theft of property and received an effective sentence of life imprisonment. His convictions and sentence were affirmed by this court on direct appeal, and our supreme court denied application for permission to appeal. See State v. Kenneth Campbell, No. 01C01-9206-CR-00189, 1993 WL 86936 (Tenn. Crim. App. Mar. 25, 1993), perm. to appeal denied (Tenn. July 6, 1993). Our opinion summarized the facts supporting the petitioner's convictions:

The record establishes that Leah Jobe and the defendant had been romantically involved with each other for a long time. In January 1991, Jobe told the defendant of her growing feelings for Stevenson. At this time, she was attempting to decide whether to continue her relationship with the defendant or start one with Stevenson. At approximately 11 p.m. February 6, 1991, the defendant saw Stevenson's car parked near the Jobe residence. He parked his car a block or two away and took up an ambush position nearby. Armed with a .380 automatic firearm, he waited for Stevenson. The defendant maintained this vigil throughout the rest of the night and into the morning. At approximately 6 a.m., Stevenson emerged from Jobe's house. Without a word, Campbell shot Stevenson once in the head as he stood in the doorway. Stevenson died within minutes.

After shooting Stevenson, Campbell went inside Jobe's house. He told her "he was going to jail for it." He dragged Stevenson into a vacant bedroom. He cleaned up the blood on the floor so as not to frighten Jobe's small children. He rifled the victim's pockets, took the car keys, and fled the scene in the victim's car.

Two days later he surrendered to Detective Larry Carter. At this time, he gave Carter a detailed statement. He refused, however, to give Carter the weapon used to shoot Stevenson.

Id. at *1.

Subsequently, the petitioner filed a petition for post-conviction relief, which was denied. This court affirmed the denial, concluding that the petitioner's due process rights were not violated at trial by the jury instructions on premeditation. See Kenneth Campbell v. State, No. 01C01-9409-CR-00321, 1995 WL 328862 (Tenn. Crim. App. June 1, 1995).

On May 21, 2003, the petitioner filed a *pro se* "Request for Forensic DNA Analysis," pursuant to the Post-Conviction DNA Analysis Act of 2001. See Tenn. Code Ann. § 40-30-301 (2003). The petitioner requested DNA testing of evidence in the possession of the State. Counsel was subsequently appointed, and an amended petition was filed on August 11, 2003, wherein the petitioner requested the court to order DNA testing on the bullet recovered from the crime scene and introduced at trial, to determine whether it contained the victim's DNA.

At the February 12, 2004, hearing on the petition, the petitioner asserted that the bullet recovered at the crime scene was not the actual bullet that he fired at the victim, and therefore, the bullet would contain no DNA from the victim. The petitioner's counsel stated the rationale for the petitioner's assertions:

I believe [the petitioner's] position would be if there were no DNA evidence on the bullet, he would also submit that that would be a reason that he'd be seeking post conviction relief. And that is, if it went through the -- it's kind of an either or

argument. His argument would be, well, if there is DNA evidence, let's see if it compares to the victim. If it matches someone, then clearly that was a proper introduction of evidence and that would be that. He would also argue that if there is no evidence on this bullet, that perhaps this wasn't the bullet.

The petitioner testified as to why he believed the bullet introduced at his trial was not the bullet that killed the victim:

> Over the years I have come to run into an individual that had access to the house where the killing took place. He's the brother of the individual that lived in the house . . . .
>
> . . . .
>
> He ended up in prison with me and we was [sic] talking about the situation, the homicide, and he told me that he had found the bullet that I shot in the wall. And as I look back, that was the direction that I fired this a-way [sic] and a wall was right behind the victim. So when I read my transcripts and I come to find out that the projectile and the shell casing was [sic] within four to five feet of one another, I detected that they had picked up a bullet from a prior shooting where an individual was in the house just taking potshots at a little bitty rodent running around in the kitchen.

The post-conviction court dismissed the petition by written order filed on February 19, 2004. In its order, the post-conviction court noted the "substantial evidence of the Petitioner's guilt introduced at trial" and concluded "there is not a reasonable probability that an analysis of the bullet would produce DNA results which would have rendered the Petitioner's verdict or sentence more favorable, if the results had been available at the proceedings leading to the judgment of conviction."

## ANALYSIS

The Post-Conviction DNA Analysis Act of 2001 allows a defendant convicted of certain crimes, including first degree murder, to petition the court at any time for DNA analysis of evidence in the possession or control of the State. Courts will order testing when:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (2003). In addition, Tennessee Code Annotated section 40-30-305 provides:

After notice to the prosecution and an opportunity to respond, the court *may* order DNA analysis if it finds that:

(1) A reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-305 (2003) (emphasis added). This court has held that "[t]he failure to meet any of the qualifying criteria is, of course, fatal to the action." William D. Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. Apr. 24, 2003), perm. to appeal dismissed (Tenn. Sept. 2, 2003).

On appeal, the petitioner asserts the post-conviction court erred in not ordering DNA analysis on the bullet introduced at trial:

In this case, [the petitioner] was denied his constitutional right to present a complete and competent defense because the projectile introduced at his trial that allegedly killed the victim was not subjected to DNA analysis. [The petitioner] submits that had he been afforded the opportunity to show that this important piece of the state's evidence was not even related to the case, the verdict in the case would

have been more favorable to him. As [the petitioner] testified at the evidentiary hearing in the trial court, his trial strategy could have been different had he possessed the information at the time of his trial. Further, the evidence [the petitioner] seeks to have subjected to DNA analysis is still in existence and has not been previously analyzed.

The State responds that the petitioner "has failed to prove a necessity for further DNA analysis" and that "the trial court properly denied the petition." We agree with the State.

We begin our analysis by noting that the original trial transcripts are not in the record on appeal; therefore, we are unable to determine that a bullet was ever introduced at the petitioner's trial, nor how it was utilized by the State or attacked by the petitioner. On appeal, the petitioner has the duty to ensure that the record before this court is sufficient to convey a "fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal" in order to enable meaningful appellate review. Tenn. R. App. P. 24(b). In this regard, the petitioner's failure to provide this Court with a complete record relevant to the issue presented for review constitutes a waiver of the issue. See State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). When necessary parts of the record are not included on appeal, we must presume the ruling of the lower court was correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

Regardless, we conclude the petitioner has failed to show "a reasonable probability" that analysis of the evidence, a bullet allegedly introduced at trial, would produce DNA results which would render "the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction." At the evidentiary hearing, on cross-examination, the petitioner admitted that he had never denied killing the victim:

Q       [F]rom day one, you've never denied killing the victim; did you?

A       No, I haven't.

Q       That wasn't even an issue at trial; was it?

A       No.

Q       You relied on the defense of insanity; is that correct?

A       That's correct.

Q       How would this bullet - - whether or not it has DNA or the victim's DNA or anything, how would that have any bearing on - - I mean, you made a full confession. I don't understand how that would make the results any more or less favorable regarding your sanity.

A       If -- if we'd of [sic] had access to the lab reports, ballistics or something like that or the caliber of the alleged bullet that was found on the floor, we could have argued another defense. And this here defense probably would have rendered a more favorable verdict for me. But since this alleged bullet that was found, I haven't been able to locate the reports and they wasn't [sic] made part of the record. So, therefore, I've been unable to pursue a viable defense.

Q       But from the day you were arrested on this charge, your story was that you waited for seven or eight hours before shooting him in the head on his doorstep; is that correct?

A       That's correct. That's because –

Q       Why does the bullet -- I don't understand what the bullet has to do with anything.

A       The bullet would allow me to -- even though I confessed, the bullet would allow me to argue that someone else did the killing, if it had to get to that point. And, also, I could have been confessing to a crime that I never committed, even though that may not have been the direction I desired to take at the time.

The petitioner apparently confessed to police that he killed the victim. At trial, he maintained that he killed the victim but did so only because he was insane. At the post-conviction evidentiary hearing, he confessed again to killing the victim. We find no merit in the petitioner's argument that DNA analysis of the bullet would somehow have rendered a more favorable verdict, especially in light of the fact that at no point has he denied killing the victim. It is clear, as well, that the purpose of the petition is not to "demonstrate innocence," but to "delay the administration of justice."

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's dismissal of the petition.

_____
ALAN E. GLENN, JUDGE

-6-