**STATE of Tennessee, Appellant/Appellee,**

v.

**Frances Lucindy BALLARD, Appellee/Appellant.**

Supreme Court of Tennessee, at Jackson.

May 24, 1993.

**558**

Charles W. Burson, Atty. Gen. & Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Joel W. Perry, Asst. Atty. Gen., Nashville, for appellant.

Marti L. Kaufman, Memphis, for appellee.

John E. Herbison, Rebecca Freeman and Donald E. Dawson, Nashville, for amicus curiae Tennessee Ass'n of Crim. Defense Lawyers.

## OPINION

O'BRIEN, Justice.

This case presents appeals by both the State of Tennessee and the defendant, Frances Ballard, from the judgment of the Court of Criminal Appeals reversing Ms. Ballard's conviction of aggravated sexual battery upon a minor.

In June 1984, Frances Lucindy Ballard was arrested on charges of child sexual abuse. She was subsequently indicted on 19 counts of aggravated rape and 19 counts of aggravated sexual battery involving 19 different children. All the children listed in the indictment were enrolled in the Georgian Hills Day Care Center in Memphis between 1983 and 1984 where Ms. Ballard was a part-time employee. Ms. Ballard was eventually tried on 16 counts of aggravated rape or aggravated sexual battery against 11 children. The jury trial lasted over six weeks and culminated with Ms. Ballard's conviction on a single count of aggravated sexual battery against one of the children.

The parties present the following issues for review:

(1) Whether the Court of Criminal Appeals erred in reversing the defendant's conviction based on the State's "destruction" of pretrial videotape interviews of some of the alleged victims.

(2) Whether the Court of Criminal Appeals erred in ruling that the trial court should have granted the defendant's motion for an independent evaluation of the victim.

(3) Whether the competency of the victim to testify was properly determined by the trial court.

(4) Whether the trial court committed prejudicial error by permitting the children to testify by videotape.

(5) Whether the trial court erred by allowing State expert witnesses to testify regarding post-traumatic stress disorder.

The Court of Criminal Appeals reversed and remanded Ms. Ballard's conviction on issue (1). The court determined that the State willfully erased a number of the pretrial videotape interviews of the alleged victims before the tapes could be viewed by the defendant. The Court of Criminal Appeals determined that the State's actions were calculated to circumvent Rule 26.2 of the Tennessee Rules of Criminal Procedure by intentionally withholding discoverable evidence from the defendant.

The general test to be applied in appellate review of improper prosecutorial conduct is whether such conduct could have affected the verdict to the prejudice of the defendant. *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965); *Judge v. State,* 539 S.W.2d 340 (Tenn.Cr.App.1976). Rebecca Richardson Mason, one of the members of a task force who investigated this case testified that she and other task force members were instructed by an assistant district attorney to prepare narratives

to tape recorded interviews with the child victims and then reuse the tapes of the interviews of these children so that the tapes would not be available for discovery by the defense. She testified that in initial interviews, some of the children would state that nothing had happened and would subsequently change these statements. The Court of Criminal Appeals found that the State did not deny that the attorney general's office issued such instructions. These tapes were subject to discovery after the witnesses testified. It was held that the State may not use witnesses whose initial interviews were taped and intentionally destroyed by the State investigators. The court held that on retrial the trial judge should first conduct a hearing to determine which witnesses were competent to testify. We are inclined to agree with the view of the lower court in this regard.

The second issue set out in the State's brief is that "the evidence in the record does not support the Court of Criminal Appeals conclusion that the trial court erred in denying the defendant's motion for an independent evaluation of the victim." This issue was previously presented on interlocutory appeal. *State v. Ballard,* 714 S.W.2d 284 (Tenn.Cr.App.1986). In that case the Court of Criminal Appeals held that the trial judge erred in granting the motion for independent psychological evaluation of the alleged child victims and that defendant had presented no compelling reason to allow it where the victims had already been evaluated by competent experts and defendant would have an ample opportunity to cross-examine at trial. On the appeal of this case the Court of Criminal Appeals found the defendant had raised valid issues warranting opening the proof on retrial to give the defendant an opportunity to demonstrate a compelling necessity for an examination of the child witness by a competent and reputable expert. We concur in that finding in event there is a retrial of this case.

The next issue requires a determination of whether the trial court properly evaluated the victim's competency as a witness. When examining a child's competen-cy to testify a judge should determine whether the child understands the nature and meaning of an oath, has the intelligence to understand the subject matter of the testimony, and is capable of relating the facts accurately. *State v. Fears,* 659 S.W.2d 370 (Tenn.Cr.App.1983).

Although the trial judge did not follow verbatim the requirements in *State v. Fears,* supra at 375, he did determine that the child appreciated the difference between truth and falsehood and that the child promised to tell the truth during questioning. The purpose of determining competency of the witness in child sexual abuse cases is to allow a victim to testify if it can be determined that the child understands the necessity of telling the truth while on the witness stand. The interview, although ideally, could have been conducted in greater depth, substantially conformed to the requirements necessary to establish the competency of a child witness and demonstrated that the child understood the importance of telling the truth.

The next two issues are raised by the defendant. In her first issue the defendant contends that the trial court erred by granting the State's motion to videotape the children's testimony. The defendant asserts that the videotaped testimony violates her Sixth Amendment right to confrontation under the United States Constitution and the right to "face to face" confrontation under the Tennessee Constitution, Article I, Section 9. We have searched the record and find no transcripts of the three separate hearings the defendant states were held by the trial court on this issue. Likewise, neither the State nor the defendant provide citations to the record to indicate where transcripts of the hearings may be found.

When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn.1983). Where the record is incomplete and does not contain a transcript

of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn.Cr.App.1988). Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. *See* T.R.A.P. 24(b). The defendant has failed to properly preserve this issue for appeal.

■■■ The defendant's final issue for review is whether the trial court erred in admitting the expert testimony of Dr. Richard Luscomb. Dr. Luscomb's testimony concerned symptoms of post-traumatic stress syndrome exhibited by victims of child sexual abuse and that the children he interviewed from the Georgian Hills Day Care Center exhibited these symptoms.[1] The defendant objects to the expert testimony on the grounds that there is no reliable scientific basis for the syndrome and that this jurisdiction does not recognize the syndrome as a reliable and generally accepted concept in the medical community to diagnose child sexual abuse.

The issue is one of first impression for this Court. However, the Court of Criminal Appeals has consistently found such testimony inadmissible in sexual abuse trials and this Court has consistently denied permission to appeal in those cases. *See, State v. Dickerson*, 789 S.W.2d 566 (Tenn. Cr.App.1990); *State v. Schimpf*, 782 S.W.2d 186 (Tenn.Cr.App.1989); *State v. Myers*, 764 S.W.2d 214 (Tenn.Cr.App.1988).

Dr. Luscomb's testimony centered around four children, all of whom came under his treatment subsequent to alleging abuse by the defendant. His testimony considered each child separately, but the doctor stated that all four children exhibited "symptom constellations" consistent with post-traumatic stress syndrome and that, in his opinion, the "stressor" precipitating the syndrome in the children was sexual abuse. One of the four children

under Dr. Luscomb's care is the child upon whom the defendant's conviction is based.

Dr. Luscomb testified that "[t]here is no one characteristic" that will be exhibited by all sexually abused children, rather there are groups or "constellations" of symptoms upon which he relies to make a diagnosis. Some of the behavioral traits attributed to the children, upon which Dr. Luscomb concluded they had been sexually abused, were bed-wetting, clinging, fear (specifically fear of water and sharks for one child), irritability, nightmares, anxiety and discipline problems at school.

We do not question that Dr. Luscomb is an expert on the psychological effects of child sexual abuse. However, the doctor's testimony must be evaluated in terms of its probative value versus its prejudicial effect.

■■■ In the context of a criminal trial, expert scientific testimony solicits the danger of undue prejudice or confusing the issues or misleading the jury because of its aura of special reliability and trustworthiness. *United States v. Green*, 548 F.2d 1261 (6th Cir.1977). This "special aura" of expert scientific testimony, especially testimony concerning personality profiles of sexually abused children, may lead a jury to abandon its responsibility as fact finder and adopt the judgment of the expert. Such evidence carries strong potential to prejudice a defendant's cause by encouraging a jury to conclude that because the children have been identified by an expert to exhibit behavior consistent with post-traumatic stress syndrome, brought on by sexual abuse, then it is more likely that the defendant committed the crime. *See Bussey v. Commonwealth*, 697 S.W.2d 139, 141 (Ky.1985); *State v. Maule*, 35 Wash.App. 287, 667 P.2d 96 (1983). Testimony that children exhibit symptoms or characteristics of post-traumatic stress syndrome should not suffice to confirm the fact of sexual abuse. *Schimpf*, supra at 193. The symptoms of the syndrome are "not like a

1. The term "post-traumatic stress syndrome" brought on by sexual abuse appears synonymous with the terms "child sexual abuse syndrome," "rape abuse syndrome," and "child sex-

ual abuse accommodation syndrome." Each term is used to describe varying behavioral traits of those who have been sexually traumatized.

fingerprint in that it can clearly identify the perpetrator of a crime." *Mitchell v. Commonwealth*, 777 S.W.2d 930, 932 (Ky. 1989). Expert testimony of this type invades the province of the jury to decide on the creditability of witnesses.

■ We are also troubled by the accuracy and reliability of expert testimony involving the emotional and psychological characteristics of sexually abused children. When expert testimony involves a novel kind of scientific basis that has not received judicial approval, a court must first determine whether the basis upon which the testimony is built is reliable enough to assist the jury to reach an accurate result. *See, United States v. Brown*, 557 F.2d 541 (6th Cir.1977). The State advanced no evidence at trial that the facts underlying Dr. Luscomb's testimony were of a type reasonably relied on by experts in the particular field, *Tenn.R.Evid.* 703, or that it is possible to make a statement that sexually abused children will exhibit the same characteristics or traits.

■ In Tennessee the qualifications, admissibility, relevancy and competency of expert testimony are matters which largely rest within the sound discretion of the trial court. *State v. Rhoden*, 739 S.W.2d 6 (Tenn.Cr.App.1987). Such discretion, however, is not absolute and may be overturned on appeal where the discretion is arbitrarily exercised. *Baggett v. State*, 220 Tenn. 592, 598, 421 S.W.2d 629, 632 (1967).

The problem of child sexual abuse is of great concern to this Court as well as to the general public. It is a critical problem to which we all must be sensitive and seriously concerned. However, in fulfilling our duty to protect children from sexual abuse we should move cautiously and deliberately when considering fundamental changes in long-standing evidentiary rules. *State v. Rimmasch*, 775 P.2d 388, 390 (Utah 1989). "No matter how defenseless the child, or how strong the policy of protecting victims of abuse, justice is not served by 'proving' sexual abuse through misleading and unreliable testimony" *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims*, 74 Geo.L.J. 429, 451 (1985).

Research has led us to conclude that no one symptom or group of symptoms are readily agreed upon in the medical field that would provide a reliable indication of the presence of sexual abuse.[2] A behavioral profile that is sufficient for the purposes of psychological treatment between patient and doctor does not rise to the strict requirements necessary for admissibility in a criminal court of law. A dysfunctional behavioral profile may be brought on by any number of stressful experiences, albeit, including sexual abuse. However, the list of symptoms described by Dr. Luscomb are too generic. The same symptoms may be exhibited by many children who are merely distressed by the turbulence of growing up.

■ Further, because no consensus exists on the reliability of a psychological profile to determine abuse, expert testimony describing the behavior of an allegedly sexually abused child is not reliable enough to "substantially assist" a jury in an inquiry of whether the crime of child sexual abuse has taken place. *See, Tenn.R.Evid.* 702.

2. "It is impossible to make a general statement about the effects of sexual abuse on children" Rosenfeld, *The Clinical Management of Incest and Sexual Abuse of Children*, 22 Trauma 2, 3 (Oct.1980); "There is no one classical or typical personality profile for abused children." Martin & Beezeley, *Personality of Abused Children*, in *The Abused Child: A Multi-disciplinary Approach to Developmental Issues and Treatment* 108 (H. Martin & C. Kempe eds. 1976); "No two children or families will react in exactly the same way to the presence of child sexual abuse." MacFarlane, *Sexual Abuse of Children*, in *The Victimization of Women* 93 (J. Chapman & M. Gates eds. 1978), as Cited by *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims*, 74 Geo.L.J. 429, 440–41 (1985). "The most casual examinations of these symptoms reveals, however, that many of them are associated with other developmental and psychological problems of childhood and adolescence. For example, the fact that a child suffers nightmares, loss of appetite, regression, and depression says very little, if anything, about sexual abuse." J. Myers, *Child Witness Law and Practice* S. 4.15 at 157 (1987) as cited by *State v. Rimmasch*, 775 P.2d 388, note 13, at 402 (Utah 1989).

For the foregoing reasons we find the admission of expert testimony concerning symptoms of post-traumatic stress syndrome to be reversible error. We affirm the judgment of the Court of Criminal Appeals reversing defendant's conviction. The case is remanded for a new trial.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., concurs with separate concurring opinion.

DAUGHTREY, Justice, concurring.

In ruling the expert testimony offered in this case to be inadmissible, the majority cites as authority the Court of Criminal Appeals decision in *State v. Schimpf,* 782 S.W.2d 186 (Tenn.Crim.App.1989). For the reasons stated in my dissenting opinion in *Schimpf, id.* at 196–199, I continue to believe that certain kinds of expert testimony concerning the diagnosis of child sexual abuse should be considered admissible, especially in light of the promulgation of Rules 702 and 704 of the Tennessee Rules of Evidence. Because I also believe that the majority opinion brushes with too broad a stroke in invalidating any and all such expert testimony, even though I agree that Dr. Luscomb's testimony may have been too general to be of assistance to the jury that heard this case, I concur only in the result reached by the majority.