# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 4, 2000

## MARCIA KAY HACKETT v. ROY DAN HACKETT

**Appeal from the Circuit Court for Davidson County**
**No. 98D-2456     Muriel Robinson, Judge**

---

### No. M1999-01576-COA-R3-CV - Filed January 30, 2001

---

This is a divorce case wherein Wife appeals from the distribution of marital property and seeks attorney's fees and costs on appeal.  We affirm the action of the trial judge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Nathaniel H. Koenig, Nashville, Tennessee, for the appellant, Marcia Kay Hackett.

Mark Walker, Goodlettsville, Tennessee, for the appellee, Roy Dan Hackett.

### OPINION

Appellant, Marcia Kay Hackett, and Appellee, Roy Dan Hackett, were married on April 16, 1971, were separated in August 1998 and were divorced by decree of July 16, 1999 in the Circuit Court for Davidson County, Tennessee.  The parties had no minor children and neither party appeals the portion of the decree declaring the parties divorced pursuant to Tennessee Code Annotated section 36-4-129 (1996).

Appellant challenges the actions of the trial court in refusing to accept the testimony of the parties as to the value of marital property and in refusing to allow one Keith Gnegy to testify as an expert witness on the value of certain property.  She asserts that the trial court erred in its division of the marital property under the facts of this case.  Appellant further seeks attorney's fees and costs on appeal.

After two days of testimony, most of it emanating from the parties themselves (which could be charitably characterized as near incomprehensible), the trial judge observed:

First of all, it's been very difficult for me because of the demeanor of both of these witnesses. They seemed to not want to tell me the truth. And I'm sure preparation for this case has been really difficult for their lawyers because they don't seem to want to do what's right. They don't follow the Court's direction. It's very difficult to adduce all this evidence here because of the conduct of both of these parties.

All went fairly well during the earlier part of the first day of the trial, which involved mostly expert witnesses valuing the home of the parties. After the trial judge had declined to recognize Keith Gnegy as an expert witness as to values of old automobiles and automobile parts, the parties themselves became the primary witnesses.

Despite the fact that discovery depositions had been taken by the parties, it was not until the day before the trial started that Husband provided to counsel for the Wife his proposed division of marital property consisting of 87 separate items to be awarded to him and containing his asserted values of each individual item. His proposed distribution of marital property to Wife consisted of 98 separately enumerated items, together with his asserted values. Not to be outdone, Wife, on the day the trial began, provided the court with a duplicate of Husband's proposed list of marital items to be awarded to her with her own values asserted as to each of the 98 separate items. In her evaluation, Wife assessed no value at all to 36 of the 98 items Husband proposed award to her.

The values offered by the parties were so disparate and the testimony of the parties so incredible that the trial judge simply refused to give any weight to the testimony of either party as to the value of personal property. Essentially, the trial court let Wife choose what items of personal property she wanted and what items she did not want. A revealing example of what the trial judge faced occurred during the testimony of Wife and can be seen from the following transcript excerpt.

Q       Now, have you had any damage occur to your vehicles as a result of going across this creek?
A       While Roy was still home, the transmission casing got busted on the Lincoln, he fixed it that time. Since he left and he took the tractor that we used to [fix] the creek after the big rains, I busted the transmission in the Lincoln again, and my daughter just busted the oil pan in her car.
Q       Now, you say he took the tractor, when did he do that?
A       In January.
Q       You - - the tractor was being utilized for what purposes?
A       Well, in December we had big rains. It took us about five hours to get the road back to where I could get out, because it eats away - - there's pictures that show that it eats away the sides, and there's no way a vehicle can go down it.
THE COURT:  Okay. The main thing here is this tractor, so tell me what make and model it is. And I'm assuming she wants the tractor. If she wants the house she wants the tractor so she can keep the creek clear.
MR. VANCE:  Well - -
THE WITNESS:  I can't afford to pay for the tractor.

MR. VANCE: No. She doesn't want the tractor, Your Honor.

THE WITNESS: I want a bridge.

MR. VANCE: I'm sorry?

THE WITNESS: I want a bridge. I want - - going through the creek is not going to help me.

THE COURT: Okay. Well, we can't - -

THE WITNESS: The mortgage company has to have an access.

THE COURT: We can't give you a bridge.

MR. VANCE: I understand.

THE COURT: But, you know, if you get the property and if you get a bridge, that's between you and whoever you want to build a bridge. But I can't give you a bridge. So is the tractor not at issue here?

MR. VANCE: The tractor is not at issue at this point. He can have the tractor.

THE COURT: How's she going to clear the creek to get the car over then?

MR. VANCE: Well, she's going to have to build a bridge.

THE WITNESS: I walk a lot.

The remainder of the first day of the trial was spent tediously and meticulously considering all of these items of personal property. At the end of this first day, June 8, 1999, the trial court had declined to accept the testimony of either party as to values of these dozens upon dozens of items of personal property and had refused to recognize Keith Gnegy as an expert witness as to the value of old cars and car parts. The case was adjourned until June 21, 1999.

In the interim, no effort was made by either party to improve the caliber of testimony with regard to personal property values beyond the evidence of value submitted by the parties on June 8, 1999 and rejected by the trial court on credibility grounds. Instead, two additional lists of personal property were made exhibits, the first being a "compilation of what Marcia Hackett testified she wants" and the second being a "compilation of what Marcia Hackett testified she wants Roy Hackett to have." These two "compilations" were made from the meticulous testimony of Wife, previously given on June 8, 1999, coupled with the previous list of personal property introduced at the June 8 hearing. The result was 136 separate items of personal property to be awarded to Husband and 50 items of personal property to be awarded to Wife. The trial court accepted these two "compilations" submitted by Wife and divided the personal property accordingly.

The final decree provided that the 1998 IRS refund check be divided equally between the parties, that Husband's pension be divided equally between the parties as of June 21, 1999, that the antique saws be divided equally between the parties and that each party received their own respective bank account. Each party received their respective automobile and Husband was made solely responsible for indebtedness owed to Blazer Financial Company, Ford Motor Company, Northcrest Medical Center, and First American Bank. Wife was awarded the home place and Husband awarded $9,144.00 as his ½ share of the equity in the home place.

Given the state of the proof in this record, it is an exercise in futility to attempt to second guess the trial court in the distribution of marital personal property. On that marital property which is capable of value calculation under the proof, the distribution was equal. Otherwise, the distribution was made by simply giving Wife the items of personal property that she testified she wished to have and giving the remainder to Husband.

> Tennessee Code Annotated section 36-4-121(a) provides that marital property should be equitably divided without regard to fault. An equitable division, however, is not necessarily an equal one. Trial courts are afforded wide discretion in dividing the interests of parties in jointly-owned property. Accordingly, the trial courts distribution will be given great weight on appeal and will be presumed to be correct unless we find the preponderance of the evidence is otherwise.

*Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991)(citations omitted). Given the state of the record in this case, we cannot find that the evidence preponderates against the distribution of personal property made by the trial court.

The decision of the trial court not to allow Keith Gnegy to testify as an expert witness on the value of old cars and car parts is assigned as prejudicial error by the appellant. The record shows a strange paradox. Wife repeatedly testified that the cars and car parts collected by Husband in pursuit of his apparent hobby were junk and of little or no value and that she wanted them moved off of the property. On the other hand, she offered Mr. Gnegy as an expert on the value of these cars and car parts, seeking to establish by his testimony that these cars were worth $81,355.00.

The trial court refused to accept his credentials as an expert witness and disallowed his testimony. Mr. Gnegy was a mechanic for Peterbilt Motors with a side hobby of rebuilding hotrods and reconditioning wrecked automobiles. He testified that he purchased this type of car, purchased and sold such parts, and reconditioned cars. He had no schooling other than a year of training in automobile diesel school and had no training with respect to pricing and buying automobiles. After voir dire, the trial court refused to recognize Mr. Gnegy as an expert witness on the value of the Hackett automobiles and parts.

The Supreme Court of Tennessee has held:

> In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). The trial court's ruling in this regard may only be overturned if the discretion is arbitrarily exercised or abused.

*McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997). In this case, the trial court did not abuse its discretion in refusing to recognize Mr. Gnegy as a qualified expert.

After hearing all the proof, the trial court stated:

The cars and parts will be awarded to Mr. Hackett. Ms. Hackett failed to prove they have any value whatsoever, really. She attempted to bring a witness in, but was no - - the witness was not an expert; therefore, she was not successful in that endeavor.

So the Court concludes that, basically, these things are junk and have no value. They both refer to these items as junk. He's going to clean out the cars and the junk and the items out of the barn within 90 days. She's enjoined and restrained from impeding his entry to the property, or allowing her father to do so, so he can get this cleaned up. He will notify her when he comes to take some of this stuff out.

The evidence does not preponderate against this finding of fact by the trial court, and we cannot disturb it on appeal. Tenn. R. App. P. 13(d).

The only other issue is the application of the appellant for attorney's fees on appeal, which is respectfully denied.

The parties to this case were less than impressive as witnesses, and the trial court had little regard for their credibility. In summary, the trial court did about as well as is possible to do with this record, and we affirm the judgment of the trial court.

Costs of the appeal are assessed against Marcia Kay Hackett.


_____
WILLIAM B. CAIN, JUDGE