IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 30, 2010

## STATE OF TENNESSEE v. MATTHEW I. TART

**Appeal from the Criminal Court for Sullivan County**
**Nos. S56438 and S56439     Robert H. Montgomery, Jr., Judge**

_____

**No. E2009-01315-CCA-R3-CD - Filed April 21, 2010**

_____

The defendant, Matthew I. Tart, appeals from the Sullivan County Criminal Court's denial of alternative sentencing following his pleas of guilty to charges of violating the motor vehicle habitual offender law, speeding, and leaving the scene of an accident.  Upon our review of the record, we affirm the judgments of the trial court, but we remand for the trial court to consider amendments to the judgments.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined.  D. KELLY THOMAS, JR., J., filed a concurring opinion.

Stephen M. Wallace, District Public Defender; and Richard Tate, Assistant Public Defender, for the appellant, Matthew I. Tart.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Laura Rayment, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

        The trial court accepted the parties' plea agreement that provided for an effective four-and-one-half-year, Range I sentence, subject to the trial court's determining the manner of service of the sentence.

        In the guilty plea hearing, the court referred to certain affidavits that set forth the factual bases for the convictions, and it indicated that the parties had stipulated the facts stated in the affidavits.  These affidavits were not, however, included in the record on appeal.

In the sentencing hearing, the defendant's wife testified that the defendant worked in construction, that they had filed bankruptcy due to financial distress, and that the family, which included three small children, needed the income the defendant could provide. The defendant testified that his three charges for driving in violation of the habitual offender law resulted from his taking his children "to do what they needed to do, trying to be a dad."

A Board of Probation and Parole report detailing the defendant's probation supervision was admitted as an exhibit to the hearing. The defendant was placed on "Bond Supervision" in 2000 for a third conviction of driving under the influence (DUI). In 2001, he was placed on probation in that DUI case and for driving on a revoked license and leaving the scene of an accident. In 2002, his suspended sentences expired. In 2005, the defendant was convicted of violating the motor vehicle habitual offender law and third-offense DUI, resulting in an 18-month sentence. In 2006, he received a determinate release. He completed determinate release probation on October 24, 2007, and misdemeanor probation on November 12, 2007. The report indicated there were "no violation reports filed, however, the offender was rarely employed during any of the probation periods." The report stated that the defendant paid the supervision fees in full but that he failed to pay court costs and fines which, as of June 8, 2009, totaled $4,917.04.[1]

At the conclusion of the hearing, the trial court found that the defendant had a significant prior record of offending and that he was on bond for the first habitual offender conviction under consideration when he committed the other two such violations. The trial court gave slight weight to the defendant's claim that his offending neither caused nor threatened serious bodily injury but declined to find either that he offended due to strong provocation or that substantial grounds existed to excuse or justify his offenses. The court also declined to find that the defendant's offending was motivated by a desire to provide necessities for his family or that he evinced genuine remorse. The court found that the defendant was not a "very strong candidate for probation simply because . . . [the court doubted] . . . whether [he would] be able to serve . . . a probated sentence without just continuing to do whatever [he] want[ed] to do because in [his] mind [he would] justify that it's all right." The court ordered the defendant "to serve . . . 36 months" and placed him on probation for the balance of 18 months.

On appeal, the defendant claims that the trial court erred in denying him probation or some other form of alternative sentencing.

"The burden of demonstrating that a sentence is erroneous is upon the party

[1]The report listed a number of arrests between 1992 and 2000. The trial court and the State in its brief refer to these events as convictions, but the record does not evince such a record of "convictions."

appealing." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The record as presented on appeal fails to inform this court of the nature and circumstances surrounding the conviction offenses and, accordingly, deprives this court the opportunity to conduct its mandated de novo review of the sentencing determinations. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). In the absence of the affidavits referenced in the transcript of the plea submission hearing, we are without even the most basic facts upon which we could conduct a de novo review. *See* T.C.A. § 40-35-401(d) (2006) (requiring that appellate court conduct a de novo review of the sentencing decision of the trial court with a presumption that the determinations made by the trial court are correct). In consequence, we must presume that the trial court correctly denied alternative sentencing in this case. *See State v. Shawn Nicholas Ferguson*, No. M2008-00241-CCA-R3-CD (Tenn. Crim. App., Nashville, June 24, 2009).

That aside, we notice aspects of the sentences as imposed to which we call attention. The trial court ordered each one-and-one-half-year effective sentence to be served via one year in confinement followed by six months on probation. As such, each sentence bespeaks a split confinement arrangement. *See* T.C.A. §§ 40-35-104(c)(5), -306. One might infer that, by using this arrangement and by referring to the felony sentences in terms of months, the trial court intended for the defendant to serve a total of three years before being released on probation for one and one-half years. In the event such was the intention of the trial court, we view the arrangement as plain error and offer the following comments.

Tennessee Code Annotated section 40-35-501(a)(3), relative to split confinement, provides in part:

> Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date. The release shall not occur for sentences of two (2) years or less when the sentences are part of a consecutive sentence whose term is greater than two (2) years.

T.C.A. § 40-35-501(a)(3). Each of the defendant's one-and-one-half-year sentence blocks would, if standing alone, be subject to section 501(a)(3)'s first clause that mandates release upon the offender's reaching his release eligibility date which, in the case of the defendant,

a Range I offender, would be 30 percent of each sentence. However, each one-and-one-half-year block runs consecutively with the others, creating an effective sentence of four and one-half years. As such, as provided in the section's second clause, the defendant's effective sentence, being in excess of two years, is not subject to the mandated release upon attainment of the release eligibility date. The second clause of section 501(a)(3) does not mean, however, that the service of three years in confinement is authorized.

Code section 40-35-306(a) empowers the court to order continuous service of 365 days *as a component of split confinement*. The Code grants no authority to extend the confinement portion of a split confinement sentence beyond 365 days. *See State v. Demetry Fitzgerald Conley*, No. M2007-01667-CCA-R3-CD (Tenn. Crim. App., Nashville, July 9, 2009) (Witt, J., dissenting).

In the present case, on the one hand, the post-confinement feature of probation in each of the three felony sentences suggests split confinement, and as such the maximum time of confinement would be 365 days, followed by three and one-half years of probation. On the other hand, if we were to treat the provision for probation as superfluous, the defendant would be eligible for release as a Range I offender in 16.2 months (30 percent of four and one-half years).[2]

Thus, we remand the case to the trial court for that court to determine whether it wishes to retain the probation component, thus invoking section 40-35-306's 365-day limitation on split confinement. If so, the court should amend its judgments to reflect the 365-day period of confinement followed by three and one-half years' probation. If not, the court should amend its judgments to delete the provisions for probation.

Except for the provisions herein made for the remand, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

_____

[2]Under this second formulation, the defendant would be released approximately 20 months sooner than he would with the trial court's provision for probation.