IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2010

## STATE OF TENNESSEE v. RAYMOND STANLEY HILLIARD

**Appeal from the Criminal Court for Sullivan County**
**Nos. S55,190; S55,459; S56,216      Robert H. Montgomery, Judge**

---

**No. E2009-01484-CCA-R3-CD - Filed May 27, 2010**

---

The defendant, Raymond Stanley Hilliard, appeals from his Sullivan County Criminal Court guilty-pleaded convictions of facilitation of possession of .5 grams or more of cocaine, two counts of the facilitation of the sale of .5 grams or more of cocaine, two counts of the possession of drug paraphernalia, possession of a legend drug, three counts of the possession of a schedule IV drug, possession of a schedule II drug, and maintaining a dwelling where controlled substances are used and sold. He argues that the trial court erred by ordering that he serve the entirety of his agreed seven-year effective sentence in confinement. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and J.C. MCLIN, J., joined.

Howard Orfield, Blountville, Tennessee, for the appellant, Raymond Stanley Hilliard.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant pleaded guilty in the Sullivan County Criminal Court to two counts of the facilitation of the sale of .5 grams or more of cocaine and one count of the facilitation of the possession of .5 grams or more of cocaine in case number S56,216 in exchange for an effective sentence of four years. In case number S55,459, the defendant pleaded guilty to three counts of the possession of a schedule IV controlled substance, one

count of the possession of a schedule II controlled substance, one count of possession of a legend drug, and one count of possession of drug paraphernalia in exchange for an effective sentence of 11 months and 29 days. In case number S55,190, the defendant pleaded guilty to possession of drug paraphernalia and maintaining a residence where controlled substances are used or sold in exchange for an effective sentence of three years to be served consecutively to the four-year sentence imposed in case number S56,216. The global plea agreement provided for an effective sentence of seven years with the manner of service of the sentence to be determined by the trial court.

The appellate record does not contain the transcript of the guilty plea submission hearing. In consequence, we have reviewed the facts in case numbers S55,190 and S55,459 via the "official version" of the offenses contained in the presentence investigation report. Regarding case number S55,190, the report provides:

> On 2-5-2008[,] at 0443 hours, Sullivan County Sheriff's Office SWAT Team served a valid warrant a 260 Booher Drive Bristol[,] T[ennessee]. The residence of Raymond and April Hilliard. When the residence was searched by Sullivan County Special Operations and assisted by the 2nd Judicial Drug Task Force[] numerous amounts of drug paraphernalia were found (pipes, baggies, and scales). There was also one subject who had drug paraphernalia on him (Sam Hutson) and stated that [the defendant] let him stay there and smoke. Also during the search a sword cane was found. The Hilliards also had a security system which had 7 cameras that watched different angles on the inside and out of the residence which is commonly used by suspects maintaining a dwelling where drugs are stored or sold. Both subjects were placed under arrest and taken to the Sullivan County Sheriff's Jail. All incidents happened in Sullivan County[,] T[ennessee].

As to case number S55,459, the report provides:

> On April 22, 2008[,] members of the 2 DTF and Sullivan County Vice Unit received information from a reliable confidential source that Raymond Hilliard was going to meet with a subject to purchase a quantity of cocaine at the gas station at the corner of HWY 126/HWY 75. Surveillance revealed that in fact [the defendant] did arrive at that location and remained there for approximately 30 minutes. [The defendant] then left

turning onto Holston Institute RD. The vehicle then made several turns onto backroads returning to the initial location. Information was received through a reliable confidential source that [the defendant] was back en route to his residence. Based on the information from the reliable confidential source a traffic stop was executed on the red Blazer. [The defendant] gave consent for the search of the vehicle and his person. April Hilliard, who was a passenger in the vehicle also gave consent. Mrs. Hilliard was found to be in possession of sch[edule] II narcotic (Percocet), sche[dule] IV narcotics (Klonopin, Valium, Xanax) (39-17-417), legend drug (Soma) (53-10-105), a glass pipe commonly used for the ingestion of illegal narcotics (39-17-425). Mrs. Hilliard stated that when the police pulled them over she put the items inside her panties so that [the defendant] and her would not get in trouble. The vehicle was maintained for the purpose of purchasing and delivering illegal narcotics (53-11-401). Based on all information and the fact that they were in possession of over $1700 both April and [the defendant] were attempting to purchase illegal narcotics (39-12-101). Both subjects were arrested and transported to the Sullivan County Jail.

The report contains no information regarding the offenses in case number S56,216. Exhibited to the sentencing hearing was a Tennessee Bureau of Investigation ("TBI") Investigative Report detailing a January 14, 2009 interview with the defendant wherein the defendant admitted "that he started in the drug business in possibly the fall or early 2005 when he owned a used car lot on Bristol Caverns Road in Bristol, Tennessee." The defendant also admitted that he had agreed to pick up cocaine from an Hispanic male known to him only as "Amigo" in exchange for $150. The defendant told investigators that

> his one to two purchases of cocaine lasted for approximately one month and that he moved up to purchasing two 8-balls of cocaine at a time . . . . [The defendant] stated that he purchased two 8-balls at a time for approximately two months before he . . . moved up to purchasing 1/2 ounces of cocaine . . . . [The defendant] stated that he purchased 1/2 ounces of cocaine . . . once every week or two for approximately six months but that the amounts fluctuated according to the demand and who wanted the product.

The defendant conceded that "he was arrested a second time in April or March 2008 after he and his wife (April Hilliard) were stopped and police discovered Xanax and Percocet on his wife's person and they were both charged for possession."

At the June 15, 2009 sentencing hearing, neither party presented live testimony and instead elected to rely on the information provided in the documents exhibited to the hearing. In addition to the presentence report and the TBI Investigative Report, a statement hand written by the defendant was exhibited to the sentencing hearing. The statement provided:

> Thor Rutter called me tonight and he asked me if I could get anything[.] I told him that I did not know and that I would have to call and see[.] Thor said it would be a half ounce for Carolyn. I called the Mexican and he said come on and meet him at Walmart in Johnson City. Carolyn brought Thor to my house and Thor rode with me to Walmart. I got to Walmart and the Mexican showed up. I went over and asked if he had and he said no, he could get and to follow him. I told him no that I did not have the money and to follow me back to Bristol. He said for me to call him and he would meet me tomorrow for whatever I needed. I got out of his truck and started home.

Thus, the TBI Investigative Report and the hand written statement revealed some facts of case number S56,216.

At the hearing, the State argued that, based upon his criminal history and the fact that he committed some of the offenses while on bond for the others, the defendant should be required to serve his entire sentence in confinement. The defendant argued that because his record of criminal convictions evinced only minor offenses, because he had "spent a significant portion of a year in the jail," and because he had an "employment opportunity available to him," he should be granted probation or other alternative sentencing.

The trial court noted that it had considered the evidence presented at the plea submission hearing, "the three affidavits," and the presentence report in making its sentencing determination. The court found that the defendant had a previous history of criminal convictions that it deemed "not very significant," *see* T.C.A. § 40-35-114(1) (2006), that the defendant was a leader in the commission of the offenses, *see id.* § 40-35-114(2), that the defendant had no hesitation about committing the crimes when the risk to human life was high, *see id.* § 40-35-114(10), and that the defendant committed the offenses in case number S56,216 while on bond in case numbers S55,459 and S55,190. The court noted that it found

-4-

"most troubling" the fact that the defendant continued dealing drugs after his initial arrest in 2008, observing that "less than a couple of months later you're caught with all these drugs with April Hilliard and in addition to that you have . . . . no visible means of support [and had] some $1700.00 in cash on you." The court also observed that the amounts of drugs involved were not "small amounts" but were "real amounts of drugs, serious drugs." The court also concluded that the defendant had "set up [his] house for a drug house." The court found,

> I mean it's clear you've not been working. Basically the way you were supporting yourself was selling drugs and . . . everything I've seen here today shows me that and frankly, you know, if you can't figure it out after the first arrest . . . and then you can't figure it out the second time then frankly I just don't think that you would ever figure it out even if I said it . . . because . . . I think you're a very, very poor candidate for probation in this case.

The court also determined that a sentence of community corrections was inappropriate given the defendant's failure to establish "special needs or anything." Finally, the court ordered the defendant to serve his entire seven-year effective sentence in incarceration because "he's obviously been able to maintain employment as a drug dealer and now it's time that I keep that from happening and the only way I can do that, that I know of, is to place him into custody and order him to serve his sentence."

Initially, the State submits that because the record is inadequate for appellate review, this court must presume that the trial court correctly denied alternative sentencing. We agree with the State.

The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). In the absence of the transcript of the plea submission hearing, we have only the most rudimentary facts upon which to rely. Furthermore, because the presentence report was prepared before the defendant's arrest in case number S56,216, the presentence report does not address that offense. The hearsay report from the TBI provides only a general description of the defendant's involvement in the illegal sale and distribution of cocaine. In addition, we cannot verify the trial court's

-5-

finding that the defendant committed the offenses in case numbers S55,459 and S56,216 while on bond in case number S55,190, which was the primary reason the court denied alternative sentencing. Given these deficiencies in the record, de novo appellate review of the defendant's sentence is impossible *See* T.C.A. § 40-35-401(d) (requiring that appellate court conduct a de novo review of the sentencing decision of the trial court with a presumption that the determinations made by the trial court are correct). In consequence, we must presume that the trial court correctly denied alternative sentencing in this case.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE