IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 19, 2020 at Knoxville

## STATE OF TENNESSEE v. BILLY MACK JONES

**Appeal from the Circuit Court for Dyer County**
**No. 18-CR-164A      R. Lee Moore, Jr., Judge**

_____

### No. W2019-01759-CCA-R3-CD

_____

The defendant, Billy Mack Jones, appeals his Dyer County Circuit Court jury conviction of facilitating the sale of a Schedule II substance, arguing that the evidence was insufficient to establish his identity as the perpetrator.  Because the record is insufficient to facilitate our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. Ross Dyer, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Billy Mack Jones.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; and Justin C. Walling, District Attorney General pro tempore, for the appellee, State of Tennessee.

### OPINION

The Dyer County Grand Jury charged the defendant and his wife, Amanda E. Jones, with one count of selling a Schedule II controlled substance.[1]  The defendant and co-defendant were tried together.

At the March 2019 jury trial, Dyersburg police officer Chris Pursell testified that on November 5, 2014, he learned that a confidential informant, Mike Cole, believed he could buy 10 Adderall pills from the defendant and co-defendant for six dollars per pill. Officer Pursell explained that Adderall is "an amphetamine and a Schedule II drug." Officer Pursell and his partner Detective Mike Leggett prepared Mr. Cole to make the

_____

[1]      The indictment before us is a superseding indictment, and the original is not included included in the record.

purchase; they searched him for drugs and cash, gave him $60, equipped him with a listening device, and had him call the defendant to arrange the sale. The audio recording of that call was played for the jury. The officers then followed Mr. Cole to the Short Stop Market driving a separate unmarked car. After a short wait, Mr. Cole received a telephone call from the defendant, who was nearby with the co-defendant in a black van. Officer Pursell stated that the defendant and co-defendant "drove by us," but he could not "recall if I could look into [the van] and see who was in it." Mr. Cole followed the van "around the corner" to a side road, and the officers listened in on the interaction between him and the defendant. After the drug buy was complete, the officers retrieved from Mr. Cole 10 orange pills with the marking "M-amphet salts, 20 mgs" and wrapped in what appeared to be cellophane from a cigarette package. Officer Pursell identified the pills as Adderall, and the Tennessee Bureau of Investigation laboratory confirmed that the pills contained amphetamine.

During cross-examination, Officer Pursell stated that he had conducted approximately 80 controlled buys with Mr. Cole and that Mr. Cole was paid an average of $100 per transaction. He acknowledged that he did not video record or use a drug dog when searching Mr. Cole prior to the controlled buy. Officer Pursell could not recall specifically whether he checked the registration of the black van, stating, "If we were able to get a tag or vin number we would have." Because he did not have any notes in his file about the van, he assumed that they could not view the license plate. He acknowledged that he did not attempt to identify any fingerprints from the cellophane wrapper.

During the controlled buy, the officers were parked across the street, approximately 450 feet away from the Short Stop Market. Their vehicle had heavily tinted windows, and from his location across the street, Officer Pursell could not identify who was in the black van. The officers could not follow the van around the corner of the market without raising suspicion. Officer Pursell acknowledged that the audio recording of the telephone call between the defendant and the informant did not include any mention of drugs or money.

Detective Mike Leggett testified that on November 5, 2014, he and Officer Pursell arranged a controlled drug buy from the defendant and co-defendant through Mr. Cole, who had worked with Detective Leggett as a confidential informant "at least a hundred" times prior. In preparation for the buy, Detective Leggett searched Mr. Cole and his vehicle and installed a camera in Mr. Cole's vehicle. During a recorded telephone call, Mr. Cole arranged to purchase the drugs at the Short Stop Market "at the corner [of] Lake and Tucker." The officers followed Mr. Cole to that location and parked at a nearby location that "sits up high on the hill. And then we will park and we'll kind of blend in with the cars and we can videotape out the window with a handheld video recorder." Although they were unable to video record the transaction in this case because the

defendant drove around the corner of the market, the officers could hear audio of the transaction. Detective Leggett acknowledged that he was unable to see the occupants of the black van, but the camera installed in Mr. Cole's vehicle captured the transaction, and the recording was played for the jury. Still photographs extracted from the video recording were also shown to the jury.

During cross-examination, Detective Leggett testified that Mr. Cole had made the arrangement to purchase the drugs from the defendant and co-defendant. He estimated that Mr. Cole had made $10,000 in cash from participating in approximately 100 controlled buys with Detective Leggett. He could see Mr. Cole at the market before the defendant arrived, and Mr. Cole did not exit his vehicle before following the defendant around the corner. On the video recording taken from the camera installed in Mr. Cole's vehicle, Mr. Cole can be seen rolling down his window and speaking with someone outside of the vehicle, but Detective Leggett did not know with whom Mr. Cole spoke. Detective Leggett acknowledged that when he searched Mr. Cole before the controlled buy, he did not search under the hat that Mr. Cole was wearing.

Because the officers recorded the serial numbers of the bills used for the controlled buy, Detective Leggett searched Mr. Cole before the buy to ensure that he did not have other cash that could be used in the purchase. He also searched him for drugs to ensure that the drugs returned to the officers after the purchase were the full quantity obtained during the controlled buy. The search of Mr. Cole was a pat-down search, which included searching "[j]ust pockets, waistbands, [and] tops of his shoes." Detective Leggett acknowledged that Mr. Cole would not have been paid for his cooperation if the controlled buy had not been successful.

Mike Cole testified that he worked as a confidential informant with officers Pursell and Leggett. He stated that he knew the defendant and the co-defendant from previous interactions. In this case, the defendant initiated contact with Mr. Cole regarding his purchasing Adderall pills. Mr. Cole stated that he did not have any drugs on him when he met the officers for the controlled buy. He identified his and the defendant's as the voices on the audio recorded telephone conversation arranging the drug purchase. He agreed to meet the defendant behind the Short Stop Market, and the defendant and co-defendant arrived at that location in a black van. Mr. Cole identified the defendant as the driver of the van and the co-defendant as a passenger. At some point while waiting at the Short Stop Market, Mr. Cole spoke with the defendant on the telephone, which conversation was recorded by the camera in Mr. Cole's vehicle. Mr. Cole identified the co-defendant from the video recording and stated that she was the one who "handed me ten Adderall capsules and I gave her sixty dollars." After the purchase, someone "flagged [Mr. Cole] down needing a ride," and Mr. Cole rolled his window down to talk to him. He testified that the man did not give him anything, and he did not have any physical contact

-3-

with him.

On cross-examination, Mr. Cole acknowledged that he was paid for his participation in controlled buys and that he did not pay income tax on the money he received as an informant. He acknowledged that at one point, his driver's license had been suspended, but it was not suspended when he drove to the Short Stop Market in this case. He denied having a criminal record or drug addiction. Prior to the controlled buy, Detective Leggett searched him "[t]op to bottom." Mr. Cole stated that he first met the defendant and co-defendant at their junk store.

During redirect examination, Mr. Cole stated that he could not specifically recall whether he saw the defendant driving the black van, but he was certain that it was the defendant with whom he spoke on the telephone.

The State rested.

The co-defendant testified in her own defense that she and her husband, the defendant, co-owned a junk shop on Cedar Street where they "bought, sold[,] and traded" various used items. Mr. Cole was a customer at the shop, and he also helped with moving items on occasion. The co-defendant stated that in November 2014, Mr. Cole owed her approximately $120. The co-defendant testified that she had taken Adderall for ADHD since she was 12 years old. Two days prior to the incident in this case, Mr. Cole was at the junk shop, and the co-defendant "saw him over there in my bag" at her desk. When she confronted him, Mr. Cole set her bag down and "walk[ed] off." She did not think much of the incident at that time, but later that evening she discovered that almost all of her Adderall pills were missing. She reported the incident to her doctor, and she told Mr. Cole, "'Don't you ever bring your tail back to my shop. You owe me money.'" She explained that she had given Mr. Cole some collector's coins from her shop that he had not yet paid for.

The co-defendant acknowledged that she was the one seen on the video recording taken from Mr. Cole's vehicle, and she described the events: "I walked there and . . . . [t]here was sixty dollars laying on the seat, of my money. . . . [H]e pulled up beside me so I knew he saw me walking down the street. So, when I opened the door I just grabbed it and said 'Thanks[,]' . . . shut the door and kept going." She denied having anything in her hand before picking up the money from the seat, but when pressed, she stated that if there was something in her hand it was tissue because "I do have tissue in my hand all the time. . . . It's a habit." She stated that no one was in the black van when she was there. She denied selling Adderall to Mr. Cole, explaining that she had "lost a lot of people" to addiction. She added that, because she required Adderall to be able to go about her daily life, "that's not something I am going to get rid of."

-4-

During cross-examination, the co-defendant testified that it was November 3, 2014, when she caught Mr. Cole "in my purse. Standing behind my desk." She acknowledged that she did not report the Adderall theft to the police because "I couldn't tell you specifically -- Like, I am not going to tell you he took it and, you know, I don't -- I see you back there, but I can't specifically say it's you." She stated that the bottle in her purse was a new prescription and that almost all of the pills were missing.

On the date of the incident, the co-defendant was staying with a friend, Lisa Campbell, who lived next door to Mr. Cole on Tucker Street in Dyersburg because she and the defendant were separated. That morning, the co-defendant spoke to Mr. Cole at his house and told him, "'I need my money.'" At the time of the incident, the co-defendant walked from Ms. Campbell's house to meet someone about renting an apartment when she saw Mr. Cole drive up near the Short Stop Market. She approached Mr. Cole's vehicle and reached into his car to get the money. She denied getting out of the black van and stated that she did not see anyone in the van. She reiterated that the defendant was not present at that time.

The co-defendant acknowledged that she had been convicted of theft over $500 in 2010, stating, "It's a mistake that I made." When confronted with a second conviction of theft over $500, the co-defendant stated that it was her understanding that "it was all supposed to be rolled into one" conviction.

On redirect examination, the co-defendant explained that the apartments she was looking at were "[w]ithin walking distance" to Tucker Street. She clarified that the two theft charges on her criminal record "were all put together" and disposed of at the same court proceeding on September 19, 2012.

After a *Momon* colloquy, the defendant elected not to testify and did not put on any proof.

The jury accredited the State's evidence and found the defendant guilty of the lesser included offence of facilitation of the sale of a Schedule II controlled substance. The trial court sentenced the defendant as a career offender and imposed an effective sentence of 12 years' incarceration. Following a timely but unsuccessful motion for a new trial, the defendant filed this timely appeal, arguing that the evidence was insufficient to support his conviction.

Specifically, the defendant contends that the State failed to present sufficient evidence to establish that he was present at the time of the sale of the drugs. The State asserts that the defendant has waived our review of the issue by failing to conform his brief to the requirements set forth in Rule of Appellate Procedure 27(a)(7) and by failing to

-5-

provide an adequate record on appeal. In the alternative, the State argues that the evidence is sufficient to support the conviction.

We agree with the State that the defendant has failed to provide an adequate record for our review. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which record "shall consist of . . . the original of any exhibits filed in the trial court," Tenn. R. App. P. 24(a). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

At trial, the jury heard an audio recording of Mr. Cole's arranging to purchase the Adderall pills, and they viewed a video recording of the controlled buy. None of the trial exhibits, including the audio and video recordings, were included in the record on appeal. This court cannot adequately review the sufficiency of the evidence absent a full record of the evidence, and, consequently, we must presume the trial court's ruling to be correct. *See id.*

We also note that the defendant was convicted of the offense of facilitation of the sale of a controlled substance, which conviction does not require proof that the defendant was present during the sale of the drug as the defendant asserts. *See* T.C.A. § 39-11-403(a) ("A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, . . . knowingly furnishes substantial assistance in the commission of the felony."). Additionally, the defendant invites this court to employ an outdated legal standard to evaluate the sufficiency of circumstantial evidence, relying on *State v. Crawford* to argue that when a conviction is based on circumstantial evidence alone, "the facts and circumstances of the offense 'must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt.'" *See State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971), *overruled by State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). Our supreme court, however, explicitly overruled *Crawford* as the standard for evaluating convictions premised on circumstantial evidence and adopted the federal standard "that direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *Dorantes*, 331 S.W.3d at 381; *see also State v. Hall*, 461 S.W.3d 469, 501 (Tenn. 2015) (acknowledging the departure from the *Crawford* standard and the adoption of the federal standard); *State v. Adams*, 405 S.W.3d 641, 662 (Tenn. 2015) ("In *Dorantes*, this Court abolished any distinction between the standard of proof required at trial in cases based solely upon circumstantial evidence and that in cases where direct evidence of guilt is presented by the State.").

Accordingly, the judgment of the trial court is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE