IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2021

## JOHNNY INGLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. C1806331, 18-04128  Lee V. Coffee, Judge**

_____

### Nos. W2020-00334-CCA-R3-HC
_____

A Shelby County grand jury indicted the Defendant, Johnny Ingle, for aggravated burglary, aggravated assault, and domestic assault.  Before these charges were resolved, the Defendant filed a *habeas corpus* petition, which the trial court summarily dismissed as inappropriately filed before there was a final conviction.  Based upon the Defendant's frustration with his case, the trial court held a hearing to address the Defendant's complaints.  During the hearing, the trial court found the Defendant in contempt of court and sentenced him to ten days.  On appeal, the Defendant asserts that the trial court erred when it found him in contempt of court.  Our review of the record revealed that the Defendant failed to timely file his appeal, therefore, we dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Johnny Ingle.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Factual and Procedural History

In 2018, a Shelby County grand jury indicted the Defendant for aggravated burglary, aggravated assault, and domestic assault.  In April 2019, the Defendant filed, *pro se*, a writ of *habeas corpus*, claiming he was being illegally restrained and had been denied the assistance of counsel.  He asserted that a witness lied during the preliminary hearing and that "Prosecutors" "fraudulently, knowingly, and with reckless disregard for the truth"

presented the evidence to the grand jury "and gained an illegal indictment." He attacked the victim's credibility and claimed he was taken to "the med" for no reason, thereby denying his access to court. He further alleged "prejudice, bias, hostility, and judicial misconduct by" the trial court.

On May 6, 2019, the trial court summarily dismissed the *pro se habeas corpus* petition because the Defendant's case was pending, thus there was no final judgment of conviction for review; the petition failed to state a cognizable claim; and the Defendant had appointed counsel to file any necessary motions or petitions.

On December 13, 2019, the trial court held a hearing to address the Defendant's concerns regarding his representation. The trial court reviewed with the Defendant his history of representation. The Defendant had requested the first attorney appointed to him in general sessions court be removed from his case. The trial court relieved that attorney and appointed a private attorney, Mrs. Timmerman. Mrs. Timmerman represented the Defendant for over a year before the Defendant requested Mrs. Timmerman be removed from the case. The Defendant explained that he believed that Mrs. Timmerman and the State were intentionally keeping him confined "through misconduct and collateral issues." He asked the trial court to remove Mrs. Timmerman from his case "for total neglect."

The Defendant argued about the "deceit" behind his case, and the trial court explained the criminal process that follows an indictment in attempt to resolve the Defendant's concerns about the delays, which the Defendant believed were intentional acts of "deceit". The trial court explained that the Defendant was held at the hospital for a forensic evaluation; however, the Defendant refused to participate in the evaluation on four occasions. On the fifth attempt, the evaluators determined that they could not refute the legal presumption of competency due to the Defendant's refusal to speak with them. The trial court explained that it could not address the Defendant's case until the forensic report had been completed and that it was the Defendant's refusal to cooperate that delayed the report.

The Defendant demanded to know on what grounds the trial court issued the order for a forensic evaluation. Mrs. Timmerman intervened, explaining that she had requested the evaluation based upon an "outburst" she witnessed in court. She stated that she made the request to ensure that he was not tried unless he understood the process. She believed that the evaluation would likely indicate that the Defendant was competent, so she withdrew her request after the fifth failed attempt to conduct the evaluation. The Defendant objected to Mrs. Timmerman's statement, insisting that it was the State who requested the evaluation. The Defendant repeatedly spoke over the trial court as the trial court attempted to explain that the State did not request the evaluation.

2

The Defendant then attempted to argue with the trial court about whether Mrs. Timmerman had represented him "on the issue concerning the mental evaluation" based upon her absence during the attempts to conduct the forensic mental evaluation. The Defendant reiterated his stance that the State, not Mrs. Timmerman, had requested the forensic mental evaluation.

Next, the Defendant asked the trial court to provide him with various pieces of physical evidence associated with the alleged offenses. The trial court told the Defendant that, because the case had not yet gone to trial, the trial court knew nothing about the evidence in the Defendant's case and then attempted to explain the discovery process. After briefly attempting to argue the evidence against the State's case, the Defendant agreed that he wanted Mrs. Timmerman removed from the case. The trial court cautioned the Defendant that his new attorney would likely ask to reset the trial date to have more time to prepare. The Defendant perceived any delay in his trial as the trial court "keeping [him] incarcerated by misconduct." The Defendant then accused the trial court of lying on the record. In response, the trial court held the Defendant in contempt of court. The trial court appointed a new attorney and set the case for a status hearing before the trial date. The trial court made the following findings at the end of the hearing:

> For the record, on Johnny Ingle the Court is entering a judgment order finding Mr. Ingle is in direct contempt of court, summary contempt of court, pursuant to Tennessee Rules of Procedure Rule 42 for an audible obscenity and verbal hostility committed in the presence of the Court. That's a direct finding of contempt of court. Would sentence Mr. Ingle to ten days confinement in the Shelby County jail, and this conviction will run consecutive to any other convictions Mr. Ingle might get as a result of these charges that are pending against him.

The State correctly notes that there is no "judgment order" or contempt order as required by Tennessee Rule of Criminal Procedure 42 contained in the record. It is the duty of the appealing party to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). It was clear, however, from the trial court's oral findings that there was an order, thus, this Court requested and received a copy of the "judgment order" for the contempt. The judgment order was filed on the day of the hearing, December 13, 2019. The Defendant's notice of appeal reflects a filing date of February 25, 2020, and appears to have been signed by the Defendant on February 12, 2020.

## II. Analysis

3

In Tennessee, "the notice of appeal required by [Tennessee Appellate Procedure] Rule 3 shall be filed with and received by the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). Rule 4 further states that "the filing of such document may be waived in the interest of justice." *Id*. The trial court entered the contempt order on December 13, 2019, and the Defendant filed his notice of appeal on February 25, 2020. In this case, even if we were to consider the date he signed the appeal rather than the filing date, the Defendant filed his notice of appeal after the thirty-day deadline. Further, we conclude there is no need to address the Defendant's claim in the interest of justice. The Defendant did not provide this court with any explanation for the month delay and did not acknowledge the late filing.

### III. Conclusion

After a thorough review of the record and the applicable law, we dismiss the Defendant's appeal for failing to file a timely notice of appeal.

_____
ROBERT W. WEDEMEYER, JUDGE