IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 9, 2016 at Nashville

**TERRANCE HEARD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 98-02267     W. Mark Ward, Judge**

───────────────

**No. W2015-00447-CCA-R3-PC  -  Filed March 16, 2016**

───────────────

The petitioner, Terrance Heard, appeals the denial of his petition for post-conviction relief, which petition challenged his August 2001 Shelby County Criminal Court jury convictions of first degree murder and especially aggravated kidnapping.  Because the petitioner failed to prepare an adequate record for our review, we presume the ruling of the post-conviction court is correct and, therefore, affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Eric Mogy, Memphis, Tennessee, for the appellant, Terrance Heard.

Herbert H. Slatery III, Attorney General and Reporter; Clarence Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        In August 2001, a Shelby County Criminal Court jury convicted the petitioner of one count of first degree premeditated murder, one count of murder in the perpetration of a kidnapping, and two counts of especially aggravated kidnapping for his role in "the kidnapping and murder of Marshall 'Pokey' Shipp and the kidnapping and beating of Ricky 'Kuboo' Aldridge." *State v. Terrance Heard*, No. W2001-02605-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, Nov. 6, 2003), *perm. app. denied* (Tenn. Mar. 22, 2004).  This court affirmed the convictions and accompanying total effective sentence of life plus 50 years on direct appeal.  *See id.*, slip op. at 1, 23.  The evidence adduced at the petitioner's trial established that the petitioner, a member of the

Gangster Disciples, and 14 fellow gang members kidnapped and beat the victims for violations of gang rules. *See generally id.* The perpetrators kidnapped the victims, drove them to a Memphis park, and then beat Mr. Shipp with fists, feet, tire irons, crowbars, and bats before shooting him. The perpetrators beat Mr. Aldridge with their hands and feet. With regard to the petitioner's participation in the crimes, the evidence established "that Gangster Disciples armed with handguns put [the victims] under 'Gangster Disciple arrest' and escorted them" to a meeting, at which the petitioner was present, "where Gangster Disciples were debating what punishments" the victims should receive for their violations, which included Mr. Shipp's interfering with the beating of "Devin Haywood, a mentally handicapped man" by other Gangster Disciples, *id.*, slip op. at 4, 23; that he "drove a black pickup which carried several other Gangster Disciples and led a three vehicle caravan to" the park where the beatings occurred, *id.*, slip op. at 22; that he "and other Gangster Disciples used bats and crowbars to beat Shipp," *id.*; and that he "held Shipp from behind so other Gangster Disciples could beat him with their weapons," *id.* Mr. Shipp was also shot "because he was a 'rebellious brother' who disrespected ranking Gangster Disciples and fought with fellow gang members." *Id.*

On October 20, 2004, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he had been denied the effective assistance of counsel. The post-conviction court appointed attorney Greg Carman to represent the petitioner, and Mr. Carman filed an amended petition for post-conviction relief in December 2005, alleging that the petitioner's trial counsel performed deficiently by failing to properly investigate the case, by failing to subpoena crucial witnesses in the petitioner's defense, and by failing to effectively cross-examine two State's witnesses and claiming that but for trial counsel's deficient performance the result of the trial would have been different. No action was taken on the petition until 2008, when the post-conviction court granted Mr. Carmen's request for additional time to investigate and leave to file a second amended petition. In August 2010, the post-conviction court granted Mr. Carman's motion to withdraw based upon Mr. Carmen's having taken a position in the district attorney's office and appointed attorney David A. Stowers to represent the petitioner. More than two years later, the post-conviction court granted Mr. Stowers' motion to withdraw on grounds that Mr. Stowers had relocated his office outside of Shelby County. The post-conviction court then appointed attorney Allen Steele to represent the petitioner. Less than two weeks later, Mr. Steele was allowed to withdraw, and the post-conviction court appointed Bridgett Stigger to represent the petitioner. Although no order allowing Ms. Stigger to withdraw appears in the record, a November 15, 2012 order appointing attorney Eric Mogy to represent the petitioner does. Mr. Mogy filed an amended petition for post-conviction relief on the petitioner's behalf on June 24, 2014, nearly 10 years after the petitioner's filing of his original petition.[1] The

---

[1] In the order denying post-conviction relief, the post-conviction court indicates that the

second amended petition contained claims of ineffective assistance of counsel and prosecutorial misconduct. A third amended petition added more claims of ineffective assistance and prosecutorial misconduct.

The post-conviction court conducted an evidentiary hearing in two parts on September 11, 2014, and January 21, 2015. A transcript of those proceedings was not included in the record on appeal. The post-conviction court summarized the evidence presented at the evidentiary hearing as follows:

> [The petitioner] complained that his attorney had not spoken to [State's witness and victim] Ricky Aldridge and [State's witness] Timothy Aldridge prior to trial and did not subpoena Carlos Bean and Ervin Brooks as witnesses. According to [the petitioner], Mr. Bean and Mr. Brooks would have testified that the [p]etitioner had attended the meetings discussing the conflicts between Mr. Bean and the murder victim, because [the p]etitioner was from the same "deck" as Mr. Bean and was there in his support. [The p]etitioner also testified that he asked [trial counsel] to subpoena some of his co-defendants to testify in [his] trial, but she failed to do so.
>
> [The petitioner] further testified that he had obtained a transcript of the trial of his co-defendants Antonio Sykes and Matrin Becton and had compared the testimony of Ricky and Timothy Aldridge in that trial [which took place prior to the [p]etitioner's trial] with their testimony in [his] trial and found many significant inconsistencies which he alleges should have been utilized by [trial counsel] for impeachment purposes. . . .
>
> . . . .
>
> [The petitioner] also testified that [trial counsel] had failed to develop a proper trial strategy, neither he nor his post-conviction counsel offered any better trial strategy. In this regard, [the p]etitioner's principal theory of defense was that he was acting under "duress." [The p]etitioner testified that he voluntarily joined the "Gangster Disciples" street gang

responsibility for the delay lay with the petitioner, who "would voice dissatisfaction with his court appointed attorney and/or request additional time to prepare for the evidentiary hearing" each time the case was set for hearing.

and that he knew the rules of the organization, including the fact that punishments included the commission of aggravated assaults and murder. . . . Thus, the [p]etitioner contends that under his version of the events he did not know that a murder was going to take place and he could do nothing to prevent it or walk away as it would have been in violation of gang rules. Therefore, he concludes that if his version of the events had been properly established the jury would have found he acted under duress.

[The petitioner] also testified that [trial counsel] failed to bring before the jury the fact that Ricky Aldridge had admitted to perjury in another trial. He also complained that [trial counsel] did not subpoena the police officer who conducted the photo lineup in which Ricky Aldridge identified the [p]etitioner. . . .

Finally, [the petitioner] testified that he believed the prosecutor had committed prosecutorial misconduct by presenting the testimony of Ricky and Timothy Aldridge because of the inconsistencies in their testimony cataloged above. His theory was that the State was presenting known false testimony.

. . . . [Trial counsel] testified that she met with the [p]etitioner many times prior to trial and since he was going to be placed on the scene and did not have an alibi, they decided to go with some form of duress defense. Either she or her investigator spoke with Carlos Bean and Ervin Brooks. She could not speak to any co-defendants because they were privileged not to speak with her. She testified that she obtained the transcripts of the two prior trials and the preliminary hearing, and she thought she also had all of the witnesses pre-trial statements. With these she made a chart of all the different versions or inconsistencies and then selected which ones to use for effective cross-examination. She testified further that if she did not bring out an inconsistency it could have been for several reasons. They may have been minor. They may not have been material. They may not have helped the defense. As far as whether [the p]etitioner was driving the truck[,] [trial counsel] did not have any

-4-

witnesses to testify otherwise and believed it really did not matter whether he was driving or in the back of the truck.

(eleventh alteration in original). The post-conviction court concluded that the petitioner had failed to establish that his trial counsel performed deficiently. The court

> want[ed] to make it abundantly clear that even if, for sake of argument, trial counsel was 'deficient' in any or all of these matters, based on the particular facts of this case, there is not a reasonable probability that the outcome of the proceedings would have been different. [The petitioner] has failed to establish 'prejudice' with regard to any and all of the various allegations he has raised.

In this appeal, the petitioner, without a single citation to the record, contends that he was deprived of the effective assistance of counsel at trial "when trial counsel failed to properly impeach the State's eyewitnesses."

Unfortunately for the petitioner, the record on appeal contains neither the transcript of the evidentiary hearing nor any exhibits thereto. *See* Tenn. R. App. P. 24(b), (c). The record indicates that despite being given ample time and opportunity, the petitioner failed to ensure that the transcript was included for our review. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Because the petitioner failed to include the transcript of the evidentiary hearing, we must presume that the ruling of the post-conviction court denying relief was correct.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE