IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 29, 2019, at Knoxville

## STATE OF TENNESSEE v. KRISTIE WARD THOMPSON

**Appeal from the Circuit Court for Lauderdale County**
**No. 10481     Joe H. Walker, III, Judge**

_____

### No. W2018-02229-CCA-R3-CD

_____

The Defendant, Kristie Ward Thompson, pleaded guilty to reckless homicide and received a twelve-year sentence to be served concurrently to a sentence in a separate case. The Defendant challenges the trial court's denial of alternative sentencing. Upon review of the record and applicable law, we affirm the judgment of trial court but remand for correction of the judgment form in compliance with Tennessee Code Annotated section 40-35-209.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Lauren A. Raynor, Brighton, Tennessee, for the appellant, Kristie Ward Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

The Defendant was indicted for facilitating second degree murder through the unlawful distribution of heroin. On October 30, 2018, the Defendant entered a guilty plea to an amended charge of reckless homicide, as a persistent offender instead of a career offender. The transcript of the guilty plea hearing and the complete plea of guilty form are not included on the record on appeal. The judgment form shows that the

judgment was entered on October 30, 2018, and notes in the special conditions section, "Hearing on Nov. 16, 2018."

On November 16, 2018, the trial court held a sentencing hearing. The pre-sentence report is also not included in the appellate record. The victim's sister testified at the hearing and asked the court to consider the strongest sentence that the law would allow. The victim's sister stated that the Defendant left the victim in a field to die. The victim's sister described the grief her family continued to suffer as a result of her brother's death.

The Defendant also testified at the sentencing hearing. She acknowledged that she had a lengthy criminal history, including seventy-one prior felony convictions primarily for forgery and drug offenses. She apologized to the victim's family and stated that she wished she had made different decisions on the day of the victim's death. She stated, "I understand the decisions that I made and the actions that I took that day may have caused [sic] a young man his life. And I regret that to the fullest."

According to the Defendant, on the day of the victim's death, she received a telephone call from Mr. Marvin Foster at 12:40 p.m., informing her that "the guy had overdosed." We glean from the record that the victim took an overdose of heroin and that Mr. Foster moved the victim, who may still have been alive, to a field, where Mr. Foster and the Defendant left him and he ultimately passed away. The Defendant denied selling heroin and claimed that she did not give heroin to the victim. She testified that she was in court when the victim ingested the heroin. The Defendant testified that if the court imposed an alternative sentencing, she would be able to pay court costs from her disability benefits and live with her parents.

On cross-examination, the Defendant testified that she did not move the victim, did not check to see if the victim was alive, and did not know whether he was still alive when she left him in the field. She testified that she believed Mr. Foster when he told her the victim was already dead. The Defendant and Mr. Foster later returned to the field several hours later, and the victim "was just still" at that point. She stated that she and Mr. Foster dated in 1991 and have a child together. The Defendant denied being in a romantic relationship with Mr. Foster at the time of the victim's death and clarified that she was married to Mr. Danny Thompson at the time.

On cross-examination, the State questioned the Defendant about her involvement in "heroin runs" to Nashville with Mr. Foster. The Defendant denied going on "heroin runs" with Mr. Foster and stated that she drove Mr. Foster to Nashville and while there, she visited her daughter. The Defendant explained that she did not know what Mr. Foster did while she was visiting her daughter. The Defendant acknowledged that she had a

2003 conviction for selling cocaine and that her drug of choice had always been crack cocaine. She testified that she had been sober since 2015 and had no intention of relapsing. The Defendant denied selling prescription pills. The prosecutor asked about the victim impact statement provided by Mr. Joey Week. According to the prosecutor's questioning, Mr. Week claimed in his victim impact statement that he used to buy pills from the Defendant; however, the Defendant denied selling pills to Mr. Week.

The trial court entered a written order denying the Defendant's request for alternative sentencing because the Defendant had previously failed to comply with sentences involving probation, community correction, and parole. According to the trial court's order, the Defendant was a career offender who had seventy-one non-violent felony offenses and multiple misdemeanor convictions. The order stated that "[p]robation has been revoked, community corrections has been revoked[,] and parole has been revoked on various cases." The trial court found that the Defendant assisted Mr. Foster in disposing of the victim's body after the victim had died from a heroin overdose and that she did not seek emergency help to the victim. The trial court found that "confinement is necessary to protect society to avoid depreciating the seriousness of these offenses."

## ANALYSIS

On appeal, the Defendant maintains that the trial court erred in denying alternative sentencing. The State argues in its brief that the notice of appeal was untimely. We disagree and conclude that the notice of appeal was timely filed. The State notes that the judgment form shows that the judgment was entered on October 30, 2018, and the notice of appeal was not filed until December 14, 2018. The sentencing hearing did not occur until November 16, 2018, after the judgment was entered contrary to Tennessee Code Annotated section 40-35-209(a), (e). "Before imposing [a] sentence or making other disposition upon acceptance of a plea of guilty or upon a verdict or finding of guilty, the court *shall* conduct a sentencing hearing without unreasonable delay." T.C.A. § 40-35-209(a) (emphasis added). "*After* the defendant is sentenced, the district attorney general *shall* complete and file within thirty (30) days the uniform judgment document for the conviction that is signed by all parties." T.C.A. § 40-35-209(e)(1) (emphasis added). As we interpret this statute, no judgment should be entered prior to trial court conducting a sentencing hearing; otherwise the entry of a judgment form would contain incomplete information. It appears from the record that the trial court prematurely entered the judgment form prior to conducting a sentencing hearing. T.C.A. § 40-35-209(a). The judgment form is not signed by all the parties, and it is unclear from the record whether the clerk made a copy of the judgment form available to the parties prior to the entry of the judgment. *See* T.C.A. § 40-35-209(e)(1). Accordingly, we remand for the correction of the judgment in compliance with Tennessee Code Annotated section 40-35-209.

The record does not demonstrate that the trial court erred in denying alternative sentencing. The Defendant bears the burden of preparing a full and complete record for appellate review. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); Tenn. R. App. P. 24(b). "What is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered." *State v. Bobadilla*, 181 S.W.3d 641, 543 (Tenn. 2005) (citation omitted). When the record is incomplete and "does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." *State v. Ballard*, 855 S.W.2d 557, 650-61 (Tenn. 1993). The presentence report, including victim impact statements, the transcript of the guilty plea hearing, and the complete plea form are not included in the appellate record. Without these documents, we are unable to ascertain the facts and circumstances surrounding the Defendant's plea agreement and the extent of the Defendant's criminal history. The trial court relied upon the circumstances of the offense in denying the Defendant's request for alternative sentencing. Due to the inadequate record, we "must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); *see also State v. Anterrio Chambers*, No. W2018-01423-CCA-R3-CD, 2019 WL 1594931, at *8 (Tenn. Crim. App. Apr. 15, 2019 (declining to review the defendant's challenge to consecutive sentencing when the defendant failed to include the presentence report in the appellate record), *perm. app. denied* (Tenn. July 19, 2019). Accordingly, the Defendant has failed to establish that she is entitled to relief on this issue.

## CONCLUSION

Upon reviewing the record and the applicable law, we remand to the trial court for correction of the judgment form in accordance with Tennessee Code Annotated section 40-35-209.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 4 -